UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EVERETT SEE and SALVATORE CRISTIANO,
on behalf of themselves and all others similarly
situated,

                              Plaintiffs,

              - against -

GOVERNMENT EMPLOYEES INSURANCE
COMPANY d/b/a GEICO, and GEICO
GENERAL INSURANCE COMPANY,

                              Defendants.
--------------------------------------------------------x

**ORDER ADOPTING REPORT &
RECOMMENDATION**
21-CV-547 (PKC) (JMW)

PAMELA K. CHEN, United States District Judge:

   Plaintiffs Everett See and Salvatore Cristiano bring this class action lawsuit for breach of

contract and violations of New York General Business Law Section 349 against Defendants

Government Employees Insurance Company ("Government Employees") and GEICO General

Insurance Company ("GEICO General").  On June 16, 2021, Defendants moved to dismiss the

lawsuit and to strike certain allegations.  Before filing their motions, in January 2021, Defendants

demanded appraisal pursuant to the subject insurance policies.  Upon referral, the Honorable James

M. Wicks, Magistrate Judge, issued a Report and Recommendation ("R&R") recommending

denial of Defendants' motions and their demand for appraisal.[1]  Presently before this Court are

Defendants' objections to the R&R.  For the reasons stated herein, the Court adopts the R&R in

its entirety, and denies Defendants' motions.

---

[1] As explained in the Procedural History, Judge Wicks converted the motion to dismiss to
a partial motion for summary judgment because resolution of the appraisal issue in the motion
required him to consider "matters outside the pleadings."  (*See* R&R, Dkt. 80, at 2; *see also*
2/11/2022 Docket Order.)

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of the case and only recites the background relevant to Defendants' pending objections.

### I.    Allegations of the Amended Complaint[2]

#### A.    Parties

Defendant GEICO General is a subsidiary of Defendant Government Employees. (Am. Compl., Dkt. 21, ¶ 22.) Government Employees' headquarters is located at 5260 Western Avenue, Chevy Chase, Maryland. (*Id.* at ¶ 17.) GEICO General is also located at the same address. (*Id.* ¶ 22.) Both Defendants market collectively under the trademark "GEICO," and Defendant GEICO General markets and sells insurance policies throughout the State of New York under that trademark. (*Id.* ¶¶ 22, 23.) Defendants also market using the same website: www.geico.com. (*Id.* ¶¶ 19, 23.)

Plaintiff Everett See was involved in a car accident that effectively totaled his car on September 18, 2020. (*Id.* ¶ 15.) At the time, See was insured by GEICO General. (*Id.*) After See made a claim for property damage under his policy, GEICO General assessed the "actual cash value" of his vehicle at the time of the accident to be $9,513, and paid out the claim after accounting for taxes, fees, and the deductible. (*Id.* ¶ 38.)

Plaintiff Salvatore Cristiano was involved in a car accident that effectively totaled his car on October 6, 2018. (*Id.* ¶ 16.) Cristiano also was insured by GEICO General at the time of his accident. (*Id.*) After Cristiano made a claim for property damage under his policy, GEICO

---

[2] The following facts are drawn from Plaintiffs' Amended Complaint and are assumed to be true for purposes of Defendants' motions to strike class allegations and to dismiss. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

2

General assessed the "actual cash value" of his vehicle at the time of the accident to be $11,885, and paid out the claim after accounting for taxes and fees.  (*Id.* ¶ 39.)

The automobile insurance policies (the "Policies") that Plaintiffs had with Defendants list both Defendants and two other related entities (GEICO Casualty Company and GEICO Indemnity Company) at the top of the Policies.  (*Id.* ¶ 18, 25.)  The four entities are listed again at the bottom of the Policies, along with the Maryland address shared by Defendants.  (*Id.*)  The Policies are signed by "O.M. Nicely" and "W.C.E. Robinson," who were at the relevant time, the President and the Corporate Secretary respectively of Defendant Government Employees.  (*Id.* at ¶ 26.)

### B.    CCC Valuation Methodology

Plaintiffs allege that Defendants breached the Policies and violated New York General Business Law ("GBL") Section 349 by using the methodology of a third-party company—CCC Information Systems, Inc. ("CCC")—to calculate the "actual cash value" of their totaled vehicles. (*Id.* ¶ 3.)  CCC purports to calculate the "Base Vehicle Value" of the totaled automobile by first identifying "comparable vehicles recently sold or for sale in the claimant's geographic area." (*Id.* ¶ 34.)  Next, CCC adjusts the advertised prices of those comparable vehicles "to reflect differences in vehicle attributes, including [accrued] mileage and options[.]"  (*Id.*)  CCC then applies a weighted average[3] of these adjusted values to arrive at the "Base Vehicle Value" of the claimant's totaled car.  (*Id.* ¶ 35.)

Next, CCC applies a "condition adjustment" by determining the condition of the vehicle— either "average private condition" or the superior "dealer retail condition"—of a vehicle across

---

[3] According to the CCC Report, the Base Vehicle Value is calculated by taking a "weighted average of the adjusted values of the comparable vehicles" based on the source of the data, similarity of the totaled vehicle to the comparable vehicles, recency of the information, and geographical proximity of the totaled vehicle to where the comparable vehicles are located.  (*See* See CCC Report, Dkt. 21-7, at 2.)

3

nine components. (*Id.*, ¶¶ 40–41.)  Those components are mechanical, tires, paint, body, glass, seats, carpets, dashboard, and headliner.  (*Id.* ¶ 41.)  CCC does not change the Base Vehicle Value if all nine components of the totaled vehicle are deemed to be in "average private condition," but it increases the Base Vehicle Value for each component that is deemed to be in "dealer retail condition."  (*Id.* ¶¶ 41–44.)  Finally, CCC adjusts for taxes and any deductible under the car owner's insurance policy to arrive at the total market valuation of the vehicle.  (*Id.* ¶ 32, Figure 1; *see also id.* ¶ 44, Figures 3 & 4.)

Plaintiffs' claims focus on "a further adjustment" that CCC purportedly makes "in arriving at the base vehicle value based on an unfounded, undocumented, and unexplained assumption that the condition of each comparable vehicle" is "better than 'average private condition.'"  (*Id.* ¶ 37.)  By accepting CCC's application of across-the-board reductions based on "condition adjustment" for the comparable vehicles, Plaintiffs allege that Defendants are adopting a valuation methodology which "systematically misrepresent[s] and undervalue[s] the actual cash value of claimants' loss vehicles."  (*Id.* ¶ 3; *see also id.* ¶ 53.)

### C.     Plaintiffs' CCC Reports

The first page of the CCC Report for Plaintiff See indicates a positive condition adjustment of $216.  (*Id.* ¶¶ 42, 44 & Figure 3.)  See also received a document from Defendants dated September 22, 2020, entitled "Total Loss Settlement Explanation," which reflects a $216 increase in Base Vehicle Value based on the condition of See's totaled vehicle.  (*Id.* ¶¶ 31–32 & Figure 1.)  Yet, Plaintiffs allege that CCC "deducted $706 from the advertised price of each comparable vehicle" for See's car due to CCC's methodology of "set[ting] comparable vehicle to Average Private Condition." (*Id.* ¶ 47 (quoting See CCC Report, Dkt. 21-7, at 8–9), ¶ 49.)  This $706 deduction for all three comparator vehicles was only disclosed at the bottom and in the margins of a chart in the middle of the CCC Report for See.  (*See* See CCC Report, Dkt. 21-7, at 9.)

4

Plaintiff Cristiano's CCC Report also displays a positive "Condition Adjustment" that increases the Base Vehicle Value of Cristiano's totaled vehicle by $505.  (Am. Compl., Dkt. 21, ¶¶ 43, 44 & Figure 4.)  Yet, Plaintiffs allege that CCC "deducted $986 from the advertised price of each comparable vehicle" for Cristiano's car (*id.* ¶ 51) by using CCC's methodology of "set[ting] [each] comparable vehicle to Average Private Condition" (*id.* ¶ 53 (quoting Cristiano CCC Report, Dkt. 21-8, at 8–9)).  This $986 deduction for all three comparator vehicles was only disclosed at the bottom and in the margins of a chart in the middle of the CCC Report for Cristiano. (*See* Cristiano CCC Report, Dkt. 21-8, at 9.)[4]

## II.   Undisputed Facts Related to Defendants' Demand for Appraisal[5]

The parties do not dispute that the Policies for both Plaintiffs contain the following appraisal provisions:

> If we [*i.e.*, GEICO General] and the ***insured*** do not agree on the amount of ***loss***, either may, within 60 days after proof of loss is filed, demand an appraisal of the ***loss***.  In that event, we and the ***insured*** will each select a competent appraiser.  The appraisers will select a competent and disinterested umpire.  The appraisers will state separately the ***actual cash value*** and the amount of the ***loss***. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two

---

[4] It is unclear whether Plaintiffs are alleging that Cristiano also received a document from Defendants entitled "Total Loss Settlement Explanation," reflecting a $505 upward Condition Adjustment on the Base Vehicle Value.  Plaintiffs allege that "CCC deducted $986 from the advertised price of each comparable vehicle" for Cristiano and that the "negative adjustment is not disclosed in the Report Summary of the valuation report or in the Total Loss Settlement Explanation."  (Am. Compl., Dkt. 21, ¶ 51.)  When alleging that Defendants provided a "Total Loss Settlement Explanation" for See, Plaintiffs provided the date of the document and attached an exhibit of that document.  (*See id.* ¶ 31 & Ex. 6.)  But Plaintiffs have failed to provide such details or attach an exhibit for Cristiano's Total Loss Settlement Explanation.  For the purposes of this decision, the Court assumes that Cristiano did not receive a "Total Loss Settlement Explanation."

[5] To resolve the motion for summary judgment on the issue of appraisal, the Court only recites and relies on the undisputed facts drawn from Plaintiffs' Statement of Facts in Opposition to Summary Judgment and Defendants' Response to Plaintiffs' Statement of Facts, and any document incorporated therein.  (*See* Pls. Statement of Facts, Dkt. 73; Defs. Resp. to Pls. Statement of Facts, Dkt. 76.)

5

will determine the amount of ***loss***.  We and the ***insured*** will each pay his chosen appraiser and will bear equally the other expense of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

(*See* Declaration of Kevin Costigan in Support of Defendants' Response to Plaintiffs' Statement of Facts ("Costigan Decl."), Dkt. 77, Ex. 1, Ex. 3 (emphasis in original).)

Shortly after the filing of this lawsuit,[6] counsel for Defendant GEICO General wrote to Plaintiffs' counsel on January 19, 2021, demanding appraisal of Plaintiff See's loss.  (*See* Dkt. 73, at ¶ 2; Dkt. 76, at 5.)  On February 3, 2021, Plaintiffs' counsel rejected the appraisal demand on the basis that it "f[ell] well outside the time period [Defendants] chose to include in [their] contracts."  (*See* Costigan Decl., Dkt. 77, Ex. 2.)  On March 15, 2021, GEICO General's counsel sent a similar letter to Plaintiffs' counsel demanding appraisal of Plaintiff Cristiano's loss.  (*See* Dkt. 73, at ¶ 4; Dkt. 76, at 6.)  Plaintiffs' counsel rejected the appraisal demand by letter dated March 19, 2021, again on the basis that it "f[ell] well outside the time period [Defendants] chose to include in [their] contracts."  (*See* Costigan Decl., Dkt. 77, Ex. 4.)

## III.   Procedural History

As mentioned (*see supra* note 6), this action was initiated by removal complaint filed by Defendants on February 2, 2021.  (Notice of Removal, Dkt. 1.)  Plaintiffs thereafter filed an Amended Complaint on March 8, 2021.  (Am. Compl., Dkt. 21.)  On April 1, 2021, the Court granted Defendants leave to file a combined motion to dismiss the Amended Complaint and a motion to strike certain allegations.  (4/1/2021 Docket Order.)  Defendants' motion was fully briefed on June 16, 2021.  (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss

---

[6] This action was originally filed in New York State Supreme Court, Nassau County, on January 5, 2021.  Defendants removed it to this Court on February 2, 2021, based on diversity jurisdiction.  (*See* Notice of Removal, Dkt. 1.)

("Defs. Mot."), Dkt. 42; Plaintiffs' Brief in Opposition to Motion to Dismiss ("Pl. Br."), Dkt. 43;

Defendants' Reply in Support of Motion to Dismiss ("Defs. Mot. Reply"), Dkt. 44.)

On September 20, 2021, the Court referred the motions to dismiss and strike to Judge

Wicks. (9/20/2021 Docket Order.)  On February 11, 2022, Judge Wicks entered an order notifying

the parties, pursuant to Federal Rule of Civil Procedure 12(d), that because the motion to dismiss

"presents matters outside of the pleadings," he intended to convert the portion of the motion

"concerning the 'appraisal' of the loss of vehicles" to a Rule 56 motion. (2/11/2022 Docket Order.)

In accordance with Judge Wicks's order, Plaintiffs submitted a statement of facts that they deemed

relevant to the Rule 56 motion on February 25, 2022. (*See* Pls. Statement of Facts, Dkt. 73.)

Defendants submitted their response on March 11, 2022. (*See* Defs. Resp. to Pls. Statement of

Facts, Dkt. 76.)[7]

Judge Wicks issued the R&R on March 22, 2022, recommending denial of the motions to

dismiss and to strike, and denial of the request for appraisal. (*See* R&R, Dkt. 80.)  On April 26,

2022, Defendants filed the instant objections to the R&R, contending that it contained "at least six

fundamental errors." (Memorandum of Law in Support of Defendants' Objections to Report and

Recommendations ("Defs. Obj."), Dkt. 86, at 1.)  The parties completed briefing regarding the

---

[7] Defendants also moved to strike portions of Plaintiffs' Statement of Facts and related declarations submitted on February 25, 2022, on the grounds that these statements "refer[] to individuals who are not parties to, and claims not alleged in, the [] Amended Complaint." (*See* Dkt. 76, at 1 n.1; *see also* Motion to Strike, Dkt. 75.)  On March 22, 2022, Judge Wicks denied the motion to strike, but noted that he would "disregard any factual assertions not relevant to the pending motion[s]." (3/22/2022 Docket Order.)  In ruling on Defendants' objections to the R&R, the Court similarly does not consider those factual assertions.

In addition, Plaintiffs filed a motion on January 31, 2022, seeking leave to file a Second Amended Complaint to add two named plaintiffs, a defendant, and other claims of breach of contract and GBL Section 349 violations, based on Defendants' purported "underpayment of sales tax owed to insureds who leased their total loss vehicles." (*See* Dkt. 68, at 1.)  Judge Wicks denied that motion with leave to renew once the objections to his R&R were addressed. (8/10/2022 Docket Order.)

objections to the R&R on May 20, 2022.  (*See* Reply in Support of Defendants' Objections to Report and Recommendations ("Defs. Reply"), Dkt. 90.)[8]

## STANDARD OF REVIEW

When reviewing a magistrate judge's R&R on a dispositive motion, the district court "may adopt those portions of the report to which no objections have been made and which are not facially erroneous."  *Romero v. Bestcare Inc.*, No. 15-CV-7397 (JS) (GRB), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017).  District courts must review *de novo* "those portions of the report . . . to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also Saleh v. Pompeo*, 393 F. Supp. 3d 172, 177 (E.D.N.Y. 2019).  When applying *de novo* review to a magistrate judge's R&R, the district judge "will make an independent determination of the relevant issue, giving no deference to any previous resolution of such issue."  *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) (citing *Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 198 (S.D.N.Y. 2003)).

However, if the objecting party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error."  *Id.* at 51 (quoting *Barratt v. Joie*, No. 96-CIV-0324 (LTS) (THK), 2022 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (collecting cases)); *see also Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2020 WL 3118528, at *1 (E.D.N.Y. June 12, 2020) ("Accordingly, 'general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error.'") (quoting *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183,

---

[8] On October 6, 2022, Plaintiffs filed a letter to bring this Court's attention to "supplemental authority" in support of its position that the Court should adopt the R&R.  (*See* Dkt. 91.)  Because Defendants did not move to strike that letter, and given that district courts have broad discretion to permit additional filings by litigants, *see Neary v. Weichert*, 489 F. Supp. 3d 55, 62 (E.D.N.Y. 2020), the Court will not strike this letter from the record.

187 (E.D.N.Y. 2015) (brackets omitted)).   An R&R is "'clearly erroneous' when the [district judge] is 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'"   *Saleh*, 393 F. Supp. 3d at 177 (quoting *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009)).

Because of these differing standards, a reviewing district court judge may need to apply clear error review to those portions of an R&R where a party's objection is merely a recitation of arguments already presented to the magistrate judge, while applying *de novo* review to other portions of the R&R where the objections are grounded in new case law or arguments that were not considered by the magistrate judge.   *See Pall Corp.*, 249 F.R.D. at 51–52 (applying a mix of clear error and *de novo* review depending on whether objections were recitations of arguments already considered by the magistrate judge).   Upon reviewing the R&R, the district court judge "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge."   *Stock Mkt. Recovery Consultants, Inc. v. Watkins*, No. 13-CV-193 (PKC) (VVP), 2015 WL 5771997, at *2 (E.D.N.Y. Sept. 30, 2015) (citations and internal quotation marks omitted).

The Second Circuit has not yet squarely decided "[w]hether a party may raise a new legal argument . . . for the first time in objections to a magistrate judge's report and recommendation[.]" *Stock Mkt. Recovery Consultants, Inc.*, 2015 WL 5771997, at *3 (quotations omitted).   District courts conducting *de novo* review "ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance."   *Santiago v. City of New York*, No. 15-CV-517 (NGG) (RER), 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. Sept. 6, 2017); *see also Levy v. Young Adult Institute, Inc.*, No. 13-CIV-2861 (JPO), 2015 WL 1958889, at *4 (S.D.N.Y. Apr. 30,

2015) ("Some courts in this circuit have stated, as a general matter, that a party waives any arguments not presented to the magistrate judge.") (citation and quotation marks omitted). However, other courts have applied a multi-factor balancing test to determine whether to consider new legal arguments raised at the objection phase. *See Stock Mkt. Recovery Consultants, Inc.*, 2015 WL 5771997, at *3 (citing *Amadasu v. Ngati*, No. 05-CV-2585 (RRM) (LB), 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012)). These factors include:

> (1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered.

*See Amadasu*, 2012 WL 3930386, at *5.

## DISCUSSION

Defendants raise six objections with the R&R: (1) the R&R overlooks Plaintiffs' failure to plausibly allege that GEICO General breached its contractual duty by underpaying the amount for the loss vehicle ("Objection 1"); (2) the R&R misstates how the CCC Report is employed by overlooking that the report is available to insured and third-party claimants, and that the report is used to facilitate a negotiated settlement of total loss claims ("Objection 2"); (3) the R&R mistakenly treats the CCC Report's opinion of valuation as a statement of fact actionable under GBL Section 349 ("Objection 3"); (4) the R&R contravenes black-letter law that third-party claimants are not consumers under GBL Section 349 ("Objection 4"); (5) the R&R imposes agency theory that contravenes "100 years of black-letter corporate law" ("Objection 5"); and finally, (6) the R&R disregards the fact that the parties agreed to an out-of-court appraisal in their insurance policies ("Objection 6"). (*See* Defs. Obj., Dkt. 86, at 1–2.)

10

The Court notes that Objections 1 and 5 relate to the motion to dismiss the breach of contract claim, Objections 2 and 3 relate to the motion to dismiss the GBL Section 349 claim, Objection 4 relates to the motion to strike the class allegations, and Objection 6 relates to the demand for appraisal, which Judge Wicks converted into a summary judgment motion. The Court first addresses Objection 6, as the motion for summary judgment on the appraisal issue presents a threshold question of whether Plaintiffs properly initiated this action in state court.

## I.    Summary Judgment Motion on Demand for Appraisal

### A.    Legal Standards

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *See Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific

11

facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

**B.     Application**

The Court begins with the threshold issue of whether Plaintiffs' claims in this case should have been resolved through the appraisal process laid out in the Policies and thus are not properly the subject of a lawsuit. The R&R denied Defendants summary judgment on this issue and effectively granted Plaintiffs summary judgment on it, concluding that "there is no genuine dispute of material fact that Defendants' demand for appraisal was untimely." (R&R, Dkt. 80, at 27.) More specifically, Judge Wicks concluded that "Defendants' motion for an appraisal fails in the first instance based on the plain language of the appraisal provision paired with precedent interpreting the *exact* policy language" in an R&R issued by Judge Gary Brown of this District in *Milligan v. GEICO Insurance Company*, No. 16-CV-240 (JMA) (GRB), 2017 WL 9939046 (E.D.N.Y. July 14, 2017).[9]  (*Id.* at 26.)

1.     Objection 6: The R&R Disregards Parties' Agreement to Appraisal

Defendants raise three objections to Judge Wicks's conclusions: (1) that he misinterpreted the appraisal provision; (2) that he improperly adopted the conclusion of Judge Brown's R&R

_____

[9] The presiding district judge in *Milligan*, the Honorable Joan M. Azrack, adopted Judge Brown's R&R. *See Milligan v. GEICO Insurance Company*, No. 16-CV-240 (JMA) (GRB), 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018) (adopting Judge Brown's R&R).

from *Milligan*; and (3) that he ignored the Second Circuit's endorsement of the appraisal process to resolve disputes regarding the amount of loss in automobile insurance cases.  Defendants' first two objections recite the same arguments they raised in the underlying motion papers.[10]  Because Defendants "simply reiterate[] [their] original arguments, the Court reviews the R&R [as to these issues] only for clear error."  *Saleh*, 393 F. Supp. 3d at 177.  Finding none, the Court adopts the R&R's interpretation of the appraisal provision, including its reliance on Judge Brown's *Milligan* R&R.

However, the Court will apply *de novo* review to Defendants' objection that the R&R erred by overlooking the Second Circuit's decision in *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019) ("*Milligan I*"), and in *Milligan v. CCC Info. Servs. Inc.*, No. 20-3726-CV, 2022 WL 433289 (2d Cir. Feb. 14, 2022) ("*Milligan II*")—two Circuit decisions that arose out of the *Milligan* case in which Judge Brown issued his R&R—neither of which was cited by Defendants in their original motions.[11]  Defendants object to the R&R on the basis that it "only mentioned the *Milligan I* opinion in passing and ignored *Milligan II*, including its directive regarding appraisal,

---

[10] *Compare* Defs. Mot., Dkt. 42, at 19 (arguing that existence of a dispute over the value of vehicle loss is "a precondition to appraisal"), *with* Defs. Obj., Dkt. 86, at 22 ("[T]he existence of such a disagreement serves as a condition precedent to either party demanding appraisal."); *compare* Defs. Mot. Reply, Dkt. 44, at 8 ("The holding [in Judge Brown's R&R for *Milligan*] that the complaint could not constitute 'proof of loss' is inapposite[.]"), *with* Defs. Obj., Dkt. 86, at 24 ("The instant allegations materially differ from the allegations in *Milligan*, rendering it inapposite.").

[11] Since *Milligan II* was issued in 2022, well after Defendants finished briefing the original motion in 2021, Defendants, of course, could not have raised that decision.  Meanwhile, Defendants only make a passing reference to *Milligan I* in moving to dismiss the complaint.  In deciding to review *de novo* Defendants' new argument about the Second Circuit's *Milligan I* decision, the Court considered that, in ruling on objections to R&Rs, courts "ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance[,]" *Santiago*, 2016 WL 5395837, at *1, as well as the multi-factor balancing test applied by some courts when deciding whether to consider legal arguments raised for the first time at the objection phase.  *See Stock Mkt. Recovery Consultants, Inc.*, 2015 WL 5771997, at *2.

entirely." (Defs. Obj., Dkt. 86, at 25.)  Defendants double-down on this position in their Reply Brief, claiming that *Milligan I* and *Milligan II* "do not adopt" Judge Brown's R&R in that case, and that the Second Circuit "state[d] that appraisal is still available." (Defs. Reply, Dkt. 90, at 7.)

These arguments completely lack merit. In *Milligan I*¸ the Second Circuit considered an interlocutory appeal of the district court's decision that appraisal was inappropriate at that time. *See Milligan I*, 920 F.3d at 149–50. The Second Circuit affirmed, on the basis that a legal question about the scope of a New York State regulation requiring an insurer to reimburse the owner for the reasonable purchase price, when there is a total loss of a vehicle, was not appropriate for appraisal. *Id.* at 153–54. In its decision, the Second Circuit noted that it "need not decide whether [defendants] timely demanded appraisal," which was the basis of the district court's decision. *Id.* at 154 n.6. Indeed, Defendants agree that the Second Circuit "left undecided" the question of timeliness of the appraisal, but nonetheless assert that "the R&R's reliance on" the district court's opinion in *Milligan* "would still be misplaced." (Defs. Obj., Dkt. 86, at 24.) That argument is patently meritless.

To the extent that Defendants urge the Court to infer from the Second Circuit's affirmance of the district court's decision on grounds other than timeliness that the Circuit was rebuking or rejecting the district court's analysis on timeliness, there is absolutely no basis for such an inference.[12] Rather, because *Milligan I* did not overturn the lower court's analysis of the timeliness of the appraisal in *Milligan*, courts in this Circuit may continue to rely on that analysis. *See Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 483 n.12 (E.D.N.Y. 2022) (explaining that where a

---

[12] Plaintiffs are also incorrect in asserting that Judge Brown's interpretation of the appraisal language in *Milligan* was "affirmed by the Second Circuit." (Pls. Opp., Dkt. 87, at 18.) The Circuit in *Milligan I* neither adopted, nor rejected the district court's holding as to timeliness of appraisal.

judicial decision has not been overruled, parties and courts can continue to "invoke the decision" and cite to its analysis).

Defendants' mischaracterization of the Second Circuit's decision in *Milligan II* is even more troubling.  According to Defendants, *Milligan II* "expressly endorses using appraisal to resolve [a] plaintiff's dispute over the valuation of the loss vehicle" and "expressly envisioned the remedy of appraisal to resolve a dispute over the amount of loss."  (Defs. Obj., Dkt. 86, at 24.) However, *Milligan II* only mentions appraisal as another way to "estimate [the] reasonable purchase price" that insurers owe claimants when there are "no identical cars sold within the relevant geographic area reasonably near to the time of the loss."  *See Milligan II*, 2022 WL 433289, at *4.  The Circuit explained that in such situations, "insurers may be able to extrapolate a reasonable purchase price from the sale price of *nearly* identical cars with the aid of a professional appraiser."  *Id.*  Yet, this acknowledgment that a professional appraiser *could* be used in the narrow circumstance where there are no comparable vehicles is neither an "express endorsement" of appraisals *writ* large nor a "directive regarding appraisal."  (*See* Defs. Obj., Dkt. 86, at 24–25.)  Moreover, nowhere in *Milligan II* did the Circuit discuss whether the 60-day period for filing a "proof of loss" is commenced only by the filing of a lawsuit, or whether a pre-complaint letter can also start the 60-day countdown—as Defendants erroneously assert.  Because the parties in this case disagree as to whether Defendants' request for appraisal was *timely* under the Policies, *Milligan II* is inapposite.  Therefore, the fact that the R&R did not discuss *Milligan II* is irrelevant, and certainly not a reason for this Court to reject the R&R.

Accordingly, the Court denies Defendants' motion for summary judgment for appraisal and adopts Judge Wicks's conclusion that Defendants' demand for appraisal is untimely. Defendants' belated appraisal demand therefore does not warrant the dismissal of this action.

II.     **Motion to Dismiss GBL Section 349 Claims**

A.     **Legal Standards**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint[,] [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

General Business Law Section 349(a) prohibits all "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176 (N.Y. 2021) (brackets omitted). To survive a motion to dismiss a GBL Section 349 claim, a complaint must plausibly allege "that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice[.]" *Plavin v. Grp. Health Inc.*, 124 N.Y.S.3d 5, 10 (N.Y. 2020).

Because the "standard for whether an act or practice is materially misleading is objective[,]" plaintiffs must make "a showing that a reasonable consumer would have been misled by the defendant's conduct." *See Kronenberg v. Allstate Ins. Co.*, No. 18-CV-6899 (NGG) (JO), 2020 WL 1234603, *3 (E.D.N.Y. Mar. 13, 2020). "Courts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss." *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019) (cleaned up), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019).

### B.    Application

The R&R found that Plaintiffs have adequately alleged that Defendants engaged in materially misleading conduct because "Defendants agreed, under the respective insurance policies to pay Plaintiffs the actual cash value for total loss vehicles." (R&R, Dkt. 80, at 18.) That means, "[a] reasonable consumer . . . would expect to receive the actual cash value for his or her vehicle in the event of a collision." (*Id.*) Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, Judge Wicks found that the "condition adjustments" that CCC applied to the comparator vehicles are likely "hidden monetary adjustment[s]" that reduce the valuation of claimants' loss vehicles. (*See* R&R, Dkt. 80, at 19.)

At the outset, the Court notes that neither party has objected to the R&R's findings as to the consumer-oriented conduct and the injury elements of the GBL Section 349 claim. Accordingly, the Court reviews the R&R's analysis of these issues for clear error. Finding no clear error, the Court adopts the R&R in this respect.[13] Defendants' objections focus only on the

---

[13] Defendants incorrectly imply that Plaintiffs must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (*See* Defs. Obj., Dkt. 86, at 14 ("[D]espite the obligations of Rule 9(b), neither Plaintiffs nor the R&R identified a material misrepresentation or omission with any of the required specificity.").) It is well-established that "[a]n action under [GBL] § 349

R&R's conclusion that a reasonable consumer would have been materially misled by Defendants' alleged conduct.  (*See* Defs. Obj., Dkt. 86, at 13–15.)

       1.     <u>Objection 3: CCC Report Is An Opinion, Not A Statement of Fact</u>

Defendants' third objection is that the R&R "mistakenly treats the CCC Report's opinion of valuation as a statement of fact actionable under" GBL Section 349.  (*See* Defs. Obj., Dkt. 86, at 1; *see also id.* at 13–15.)  This objection repeats an argument already raised in the motion papers. (*See* Defs. Mot., Dkt. 42, at 2 ("Plaintiffs' GBL § 349 claims fail [because] . . . [t]he CCC Report expressly provides CCC's opinion of the vehicle's value, but opinions provide no actionable basis under GBL § 349.").)  Applying clear error review, the Court adopts the R&R in this respect because it finds no fault in Judge Wicks's analysis.  *See Pall Corp.*, 249 F.R.D at 51.

       2.     <u>Defendants' Other Objections</u>

Defendants raise several other issues with the R&R's recommendation not to dismiss Plaintiffs' GBL Section 349 claims.  As with Objection 3, some of these arguments re-tread ground already covered in Defendants' motion papers and the R&R.[14]  Accordingly, the Court only

---

is not subject to the pleading-with-particularity requirements of Rule 9(b) [of the Federal Rules of Civil Procedure], but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 128 (E.D.N.Y. 2011) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

    [14] For example, the arguments that the CCC Reports were transparent in fully disclosing the condition adjustments echo Defendants' arguments in the motion papers. *Compare* Defs. Mot., Dkt. 42, at 12 ("Review of the CCC Reports reveals they are transparent, provide explanations, and there is nothing hidden or deceptive about how condition adjustments were made for [Plaintiffs' vehicles.]"), *with* Defs. Obj., Dkt. 86, at 14 ("The CCC Reports fully disclosed and explained the applied adjustments as described and shown above.").  In addition, Defendants suggest that it addressed for the first time the relevance of *Kronenberg* in the objections (*see* Defs. Reply, Dkt. 90, at 3 (citing *Kronenberg*, 2020 WL 1234603)), but Defendants did address "Plaintiffs' ubiquitous reliance on *Kronenberg*" during the motion to dismiss briefing (*see* Defs. Mot. Reply, Dkt. 44, at 5).  In fact, Defendants specifically incorporate their arguments about why *Kronenberg* is inapposite from their motion to dismiss reply brief into their objections.  (*See* Defs. Obj., Dkt. 86, at 15.)

reviews the R&R's recommendation on these issues for clear error.  *See id.*  Finding none, the Court adopts the R&R in these respects.

The Court finds that the two remaining objections related to Defendants' motion to dismiss the GBL Section 349 claim warrant *de novo* review.  First, Defendants argue that Plaintiffs—and by implication, Judge Wicks—"ignore[] that the Ninth Circuit very recently validated CCC's adjustment of condition and rejected arguments quite similar to Plaintiffs' instant arguments." (Defs. Reply, Dkt. 90, at 4).  Citing *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022), Defendants claim that the Ninth Circuit accurately explained "the role CCC's condition adjustments [for comparator vehicles] play in helping CCC reach its opinion as to the loss vehicle's value[,]" and "concluded CCC's opinions that dealer-advertised vehicles are in Dealer Retail condition and in better condition than an average vehicle owned by private parties on the road are correct."  (Defs. Obj., Dkt. 86, at 4 n.4, 7).

Defendants are incorrect both in their application and interpretation of *Lara*.  First, it is well-established that "a decision of another circuit [is] not binding" on this Court.  *See Bryant v. Steele*, 93 F. Supp. 3d 80, 89 (E.D.N.Y. 2015); *see also Chen v. Holder*, 367 F. App'x 237, 238 (2d Cir. 2010) (unnumbered footnote reminding counsel that cases from other circuits are not binding precedent within the Second Circuit).  But this decision in *Lara* lacks even persuasive authority for the proposition advanced by Defendants because the Ninth Circuit was reviewing the district court's denial of a motion for class certification, not a motion to dismiss.  *See Lara*, 25 F.4th at 1138.  Because *Lara* addressed whether individual questions of law and fact within the proposed class predominate over common questions, the decision did not address whether the CCC Reports could materially mislead reasonable consumers.  *See id.* at 1138–40.  Therefore, it is inaccurate to claim that the Ninth Circuit "rejected arguments quite similar to Plaintiffs' instant

arguments" (Defs. Reply, Dkt. 90, at 4), or that it "concluded" that CCC's opinions are "correct" (Defs. Obj., Dkt. 86, at 7).  Finally, *Lara* is distinguishable on its face because the plaintiffs there brought claims under Washington state regulations regarding unfair claims settlement practices, *see* 25 F.4th at 1136–37, and Defendants have failed to explain how that regulation is similar to GBL Section 349.  To sum up, because *Lara* was a decision from a different circuit, issued in a different procedural posture, and interpreting a different law, Judge Wicks had no reason to consider and rely on that opinion.

Finally, Defendants object to the R&R's analysis of Plaintiffs' GBL Section 349 claims on the basis that "CCC's straightforward valuation of total loss vehicles has been approved of in many states, including in New York." (Defs. Obj., Dkt. 86, at 14.)  To support this objection, Defendants cite *dicta* buried in a footnote from a Middle District of North Carolina case, *Fortson v. Garrison Prop. & Cas. Ins. Co.*, which notes that "[i]n 1995, the New York State Insurance Department approved CCC as 'a computerized database that provides statistically valid fair market values for substantially similar automobiles.'"  *See Fortson Prop. & Cas. Ins. Co.*, No. 19-CV-294 (CCE), 2022 WL 198782, at *6 n.3 (M.D.N.C. Jan. 13, 2022).  Defendants further assert that "[t]he passage of time has not negated New York's approval of CCC's valuations, especially where no changes to CCC's valuation are alleged[.]" (Defs. Reply, Dkt. 90, at 1.)

This argument is flawed for several reasons.  First, Defendants draw the Court's attention to *Fortson*, presumably to establish that the New York State Insurance Department approved CCC's valuation methodology in 1995.  But the Court cannot take judicial notice of a court opinion in another case for "the truth of the matters asserted."  *See Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991).  Even assuming *arguendo* that the current record in this case established that a New York State regulatory agency at one point in time—here, almost 30 years ago—approved

of CCC's methodology, Defendants have failed to show through any convincing legal authorities that the existence of such approval from 1995 would foreclose Plaintiffs' ability to bring a GBL Section 349 claim based on that same conduct today.  Nor can the Court simply accept Defendants' baseless and amorphous assertion that "the passage of time has not negated New York's approval of CCC's valuations[.]"   Finally, Defendants impermissibly attempt to shift the burden onto Plaintiffs to prove that the 1995 regulatory letter is no longer relevant, either by alleging changes to CCC's valuation methodology or that there has been a subsequent reversal in regulatory approval.  However, as the moving party, Defendants bear the burden of convincing the Court that the non-conclusory allegations in the operative complaint, which the Court must accept as true, fail to state a claim under GBL Section 349.

Because none of the objections related to the GBL Section 349 are meritorious, the Court denies Defendants' motion to dismiss as to the GBL Section 349 claims.

## III.   Motion to Dismiss Breach of Contract Claim

### A.   Legal Standards

"To establish a claim of breach of contract under New York law, a plaintiff must demonstrate '(i) the formation of a contract between the parties; (ii) performance by plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB), 2014 WL 4677120, at *4 (E.D.N.Y. Sept. 29, 2014) (collecting cases).  "Under New York law, an agent may bind its principal to a contract if the agent has actual or apparent authority." *Volino v. Progressive Casualty Ins. Co.*, Nos. 21-CIV-6243 (LGS), 22-CIV-1714 (LGS), 2022 WL 5242894, at *6 (S.D.N.Y. Oct. 6, 2022) (citing *Standard Funding Corp. v. Lewitt*, 678 N.E.2d 874 (N.Y. 1997)).  Courts have recognized that, at the motion to dismiss stage, "a plaintiff need only raise a sufficient inference that some sort of agency relationship existed" because "an outsider will not be privy to the details of what conversation or conduct took place between a principal and the

21

agent[.]" *Id.* (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010)). If plaintiffs have sufficiently pled that an agency relationship exists, courts have recognized that subsequent "questions as to the existence and scope of the agency [relationship] are [generally] issues for the jury" to decide. *Amusement Indus., Inc.*, 693 F. Supp. 2d at 344 (citations and internal quotation marks omitted).

To establish an agency relationship under New York law, a plaintiff must put forth "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003). "To adequately allege an actual agency relationship" at a motion to dismiss stage, "a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 269 (S.D.N.Y. 2012).

"[W]hether an agency relationship exists is [a] highly factual [inquiry] . . . and can turn on a number of factors[.]" *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006). While the Second Circuit has not established bright line rules for determining whether a party is an agent of a principal, courts have agreed on certain "recognized indicia" of the "control and consent" between the agent and principal that are "most important" to establishing an agency relationship. *Dorna USA, LLC v. Lighthouse Superscreens, Inc.*, No. 02-CIV-73 (RLC), 2004 WL 2721239, at *2 (S.D.N.Y. Nov. 29, 2004).

## B. Application

In his R&R, Judge Wicks recommended that the Court deny the motion to dismiss the breach of contract claim. He concluded that Plaintiffs' allegations that CCC's valuation process "result[ed] in [] valuation[s] that [are] less than the actual cash value by a difference of the negative

condition adjustment" were sufficient to plausibly allege a claim that Defendants had breached the Policies.  (R&R, Dkt. 80, at 14–15 (emphasis omitted).)   In determining that Plaintiffs' claim against Defendant Government Employees should proceed, Judge Wicks found that Plaintiffs had sufficiently alleged facts to support a theory that Defendant GEICO General was acting as Defendant Government Employees' agent.  (*Id.* at 9.)

As to the breach of contract claim, Defendants object on two bases: first, that Judge Wicks improperly found that an agency relationship existed between Defendants, and second, that the R&R incorrectly held that Plaintiffs sufficiently alleged a breach of a contract.  The Court first addresses the objection as to the agency relationship.  (*See* Defs. Obj., Dkt. 86, at 16–21.)  Because the issue of a principal-agent relationship was never briefed in the motion papers, the Court exercises its discretion to review this issue *de novo*.

      1.    <u>Objection 5: The R&R Incorrectly Imposes Agency Theory</u>

The Court finds that Plaintiffs have alleged sufficient facts for this Court to find that an agency relationship existed between GEICO General and Government Employees.  Plaintiffs allege that Defendants "market collectively under the trademark 'GEICO,'" that Defendant GEICO General "markets and sells insurance policies throughout the State of New York under the trademark GEICO," and that Defendants market their products and services using the same website.  (Am. Compl., Dkt. 21, ¶¶ 19, 23.)  Plaintiffs further allege that Defendant Government Employees "investigates, handles, and adjusts all insurance claims using the same policies and procedures, regardless [of] which GEICO Company or Companies issued the relevant policy." (*Id.* ¶ 20.)  According to the Amended Complaint, GEICO General's headquarters is located at the same address as Government Employees' office, and both entities' names and their common address are listed at the bottom of the Policies.  (*Id.* at ¶ 25.)  Plaintiffs also alleged that senior

executives of Government Employees signed the Policies in question on behalf of GEICO General. (*Id.* at ¶ 26.)

Courts in this Circuit have recognized that "shared physical addresses, executive managers, telephone numbers, branding and internet presence" can "support an inference" of an agency relationship. *See Harte*, 2016 WL 1275045, at *7[15]; *see also Pullman v. Alpha Media Pub., Inc.*, No. 12-CV-1924 (PAC) (SN), 2013 WL 1286144, at *7 (S.D.N.Y. Mar. 28, 2013) (finding an agency relationship existed where two entities shared an address, the principal's representatives signed documents on behalf of the other entity, and the two entities "otherwise failed to maintain corporate formalities")[16]; *Becker v. DPC Acquisition Corp.*, No. 00-CV-1035 (WK), 2001 WL 246385, at *5 (S.D.N.Y. Mar. 13, 2001) (concluding in the context of personal jurisdiction that there was *prima facie* proof of a valid agency relationship where the name of the principal company's chairman was included on the signature block of agreements signed on behalf of agent subsidiary companies, indicating that the principal company was authorized to sign on behalf of these agent subsidiary entities); *Volino*, 2022 WL 5242894, at *6 (holding there was an agency relationship between defendant Progressive Casualty Insurance Company and related corporate entities where the defendant companies "have the same website, address and phone number" and

---

[15] Defendants' attempt to distinguish this case from *Harte*, claiming that the plaintiff there alleged that the agent "was acting under [the alleged principal's] direction and control and had actual or apparent authority to do so." (Defs. Obj., Dkt. 80, at 18). Although Defendants' argument quotes the *Harte* opinion (*id.*, quoting *Harte*, 2016 WL 1275045, at *2), the operative complaint in *Harte* did not actually contain the quoted language or allege an agency relationship.

[16] Although *Pullman* analyzed agency relationships under New Jersey law, courts in this Circuit have recognized that there is "no substantive difference between" the agency law of New York and of New Jersey. *See Floyd v. Liechtung*, No. 10-CV-4254 (PAC), 2013 WL 1195114, at *4 n.9 (S.D.N.Y. Mar. 25, 2013); *see also In re JVJ Pharmacy Inc.*, 630 B.R. 388, 402 (S.D.N.Y. 2021) (finding "there is no conflict between New York and New Jersey agency law" because "under both New York and New Jersey law, control by the principal . . . is a necessary element of an agency relationship").

report financial results and register with the New York Department of Financial Services as the "Progressive Group of Insurance Companies"); *cf. Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 394–95 (W.D.N.Y. 2021) (finding no agency relationship based solely on use of "logo and letterhead" of parent company on "insurance contracts issued by" subsidiary companies), *aff'd sub nom. Buffalo Xerographix, Inc. v. Sentinel Ins. Co.*, No. 21-1502, 2022 WL 4241191 (2d Cir. Sept. 15, 2022); *TrackThings LLC, v. NETGEAR, Inc.*, No. 21-CV-5440 (KPF), 2022 WL 2829906, at *10 (S.D.N.Y. July 20, 2022) (finding that defendant was not a principal of another entity since it lacked the "ability to hire, train, or pay [the other entity]").  Although the parties may later uncover evidence through discovery that rebuts the Court's conclusion that there is an agency relationship between Defendants, Plaintiffs have satisfied their burden at this stage. *See Harte*, 2016 WL 1275045, at *8 ("Discovery may clarify the relationship between [the purported principal and agent entities], but at this stage, [the p]laintiff has satisfied her burden.").

Finally, Defendants attack the R&R's conclusion that GEICO General acted as an agent of GEICO Employees as "entirely disregard[ing] recent and binding precedent regarding the longstanding principle of party presentation."  (Defs. Obj., Dkt. 86, at 20.)  Citing the recent Supreme Court decision in *United States v. Sineneng-Smith*, Defendants argue that the R&R "advance[s] an agency theory Plaintiffs never raised and Defendants never had an opportunity to rebut." (*Id.* (citing *Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).)  Yet, the Supreme Court also cautioned in *Sineneng-Smith* that the party presentation "principle is supple, not ironclad[,]" and that the principle applies only when a court's consideration of arguments not raised by the parties is so drastic that it amounts to a "takeover" and "radical transformation of the case."  *Sineneng-Smith*, 140 S. Ct. at 1581–82.  Here, Judge Wicks's consideration of an alternative theory of common enterprise—agency theory instead of complete control by a corporate parent over its

subsidiary—is simply not the type of "radical transformation of the case" that violates the party presentation principle.[17]   Moreover, because the Court has now conducted a *de novo* review of Defendants' objections to the R&R's agency-relationship analysis, any prejudice to Defendants from the purported violation of the party presentation principle has been "mitigated by [their] full opportunity to be heard on this issue [] and this Court's *de novo* review" of the R&R.  *See Torcivia v. Suffolk Cnty., New York*, 17 F. 4th 342, 356 n.24 (2d Cir. 2021), *cert denied*, 143 S. Ct. 438 (2022).

For the reasons stated above, the Court finds that Plaintiffs have plausibly alleged the existence of an agency relationship between Defendants.  Since "an outsider will not be privy to the details of what conversation or conduct took place between a principal and the agent," Plaintiffs here "need only raise a sufficient inference that some sort of agency relationship existed" to survive a motion to dismiss.  *Volino*, 2022 WL 5242894, at *6.  Because the Court finds that Plaintiffs have sufficiently pled facts to support an inference of an agency relationship, additional "questions regarding the existence and scope of the agency are issues for the jury" to decide.  *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 344.[18]

---

[17] The markedly different facts of *Sineneng-Smith* further illustrate why the party presentation principle is inapplicable here.  In *Sineneng-Smith*, the appellant-defendant challenged her criminal conviction by arguing that the statute under which she was convicted violated the Petition and Free Speech Clauses of the First Amendment.  140 S. Ct. at 1576.  Instead of resolving the dispute on these issues, the Ninth Circuit "named three organizations" as *amici* to brief whether the statute of conviction was overbroad, even though that issue was never raised by the parties and, in fact, the appellant-defendant "had presented a contrary theory of the case in the District Court." *Id.* at 1578, 1580–81.  In addition, the *amici* were granted twice the amount of time to present oral argument on the overbreadth issue compared to the time allocated to plaintiff's counsel, and the Ninth Circuit ultimately decided the case based on the overbreadth issue.  These circumstances led the Supreme Court to find that the case was "moved by the appeals panel onto a different track[,]" which constituted an abuse of the Circuit's discretion.  *Id.* at 1578.

[18] Defendants also incorrectly accuse Judge Wicks of "contraven[ing]" 100+ years of case law regarding piercing the corporate veil." (Defs. Obj., Dkt. 86, at 20.)  Courts in this Circuit have consistently held that "[s]uing a parent corporation on an agency theory is quite different from

2.    Objection 1: Plaintiffs Did Not Plausibly Allege Breach of Contract

Defendants object to the R&R's conclusion that Plaintiffs have sufficiently alleged breach of contract, on the basis that "the use of the CCC Report is not an equivalent of an underpayment" (Defs. Obj., Dkt. 86, at 11), and that they "must allege underpayment" to satisfy the injury and damages elements for a contract claim (*id.* at 10). This argument is a reiteration of points that Defendants made in their motion to dismiss.[19] Applying clear error review, the Court finds that the R&R's analysis on these issues was not clearly erroneous. In fact, the Court joins Judge Wicks's assessment that Plaintiffs' Amended Complaint "is teeming with allegations that Defendants underpaid Plaintiffs' for their total loss vehicle based on their allegedly deceptive practice[]" of using CCC's valuation methodology. (*See* R&R, Dkt. 80, at 20.) Therefore, the Court adopts the R&R's recommendation to reject this argument.

3.    Objection 2: CCC Is Just A Negotiation Tool

Defendants also argue that the "CCC Report is a mere tool used to negotiate the settlement of the valuation of the loss vehicle" and that the "insurance agreement does not provide that the CCC Report is a valuation that either Plaintiff must accept." (Defs. Obj., Dkt. 86, at 11.) Because this is a new argument raised for the first time in their objections, the Court must decide the threshold question of whether it should consider the argument. *See Stock Mkt. Recovery Consultants, Inc.*, 2015 WL 5771997, at *3; *see Amadasu*, 2012 WL 3930386, at *5 (noting six

---

attempting to pierce the corporate veil. In the first instance, the claim against the parent is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf—that is, in the *name* of the parent." *Sahu v. Union Carbide Corp.*, No. 04-CIV-8825 (JFK), 2012 WL 2422757, at *16 (S.D.N.Y. June 26, 2012) (quoting *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 412 (S.D.N.Y. 1996)).

[19] *See* Defs. Mot., Dkt. 42, at 5 ("Absent context—what the actual cash value of the loss vehicle is—there is no alleged underpayment. Absent a plausible allegation of underpayment, GEICO General did not breach the insurance agreement and did not injure Plaintiffs.").

factors courts consider when deciding whether to permit new argument: "(1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered.").

Here, all of the factors weigh against considering Defendants' new argument. Defendants offer no excuse for belatedly arguing that the CCC reports are only negotiating tools, and there has been no intervening change in the law to justify the delay in raising this argument. The Court also finds that Defendants' argument does not present a purely legal question,[20] because questions of how Defendants utilized CCC Reports in the claims process are factual inquiries that would benefit from discovery. As to the next factor of whether the resolution of this new argument "is not open to serious question," *see Amadasu*, 2012 WL 3930386, at *5, it is difficult for the Court to assess the merits of Defendants' argument because they cite no supporting case law, and their entire argument consists of three sentences. (*See* Defs. Obj., Dkt. 86, at 11.) Therefore, this factor does not weigh one way or another. Next, it would be inefficient for the Court to entertain this argument now because it is underdeveloped, and the Court deems it to be an issue that could use further fact development. Finally, courts generally find that considerations of fairness and risk of manifest injustice weigh in favor of hearing a newly raised argument when it would be the "only way" for a party "to salvage" a claim. *See Stock Mkt. Recovery Consultants Inc.*, 2015 WL 5771997, at *4.

---

[20] In fact, Defendants have submitted no case law to support their argument. (*See* Defs. Obj., Dkt. 86, at 11.)

Here, not entertaining this argument now will not lead to dismissal of any claims in this case. Therefore, Objection 2 is denied as untimely.

        4.    <u>Other Objections Raised by Defendants</u>

Defendants raise two other objections to the breach of contract claims. The Court rejects the first argument that the R&R "ignore[s] that condition adjustments could increase CCC's opinion of the loss value, as was the case with both Plaintiffs." (*See* Defs. Obj., Dkt. 86, at 11.) Because Defendants raised this point in their motion to dismiss,[21] the Court applies clear error review and adopts the R&R's analysis as to these issues.

Defendants' other argument is that the R&R violated "black-letter law that to defeat a motion to dismiss[,] a plaintiff cannot misstate documents incorporated into the complaint." (Defs. Obj., Dkt. 86, at 12 (citing, *inter alia, Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).) On *de novo* review, the Court finds this argument unavailing. Although Defendants recite the law correctly, this legal doctrine has no application here. First, Defendants do not explain which documents Plaintiffs purportedly have misstated. Moreover, given the obligation to draw all reasonable inferences in a plaintiff's favor on a motion to dismiss, courts will generally only reject a plaintiff's allegations that misstate exhibits when there are clear contradictions between the allegations and the underlying, incorporated documents. *See Matusovsky*, 186 F. Supp. 2d at 400 (finding a contradiction between plaintiff's wrongful termination lawsuit and a general release of claims that was incorporated into the complaint because the release signed by plaintiff and defendant several months before the lawsuit was filed

---

[21] *See* Defs. Mot., Dkt. 42, at 5 ("The CCC Reports explained CCC's opinion that [See's] Jeep, in its condition, was worth $216 *more* than a comparable Jeep in Average Private condition, and [Cristiano's] Nissan, in its condition, was worth $505 *more* than a comparable Nissan in Average Private condition.").

stated "in plain English" using "clear and unambiguous" terms that it covers "anything which has happened up to now"). Here, the Court finds that there is no clear contradiction between the allegations in the Amended Complaint and the incorporated CCC reports.

Accordingly, Defendants' motion to dismiss Plaintiffs' breach of contract claim is denied.

## IV.    Motion to Strike Class Allegations

### A.    Legal Standard

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 357 (E.D.N.Y. 2008) (cleaned up); *see also Emilio v. Spring Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) ("Motions to strike are viewed with disfavor and infrequently granted.") (brackets and quotation marks omitted)). This is particularly true for a motion to strike class allegations, because resolving such a motion "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Procter & Gamble Co.¸* 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citations and quotation marks omitted).

In order "to succeed on a motion to strike class allegations, a defendant must 'demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery.'" *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (quoting *Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015) (brackets omitted)). Although "the Second Circuit has not addressed whether a motion to strike class allegations may be brought before a class is certified, courts in this Circuit

have held that such motions may be addressed prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Bank v. CreditGuard of Am.*, No. 18-CV-1311 (PKC) (RLM), 2019 WL 1316966, at *4 (E.D.N.Y. Mar. 22, 2019) (quoting *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115–16 (E.D.N.Y. 2010) (collecting cases)).   In other words, a motion to strike class allegations before discovery is procedurally premature unless the motion "addresses issues separate and apart from the issues that will be decided on a class certification motion." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotations and citation omitted)).

**B.   Application**

In their motion papers, Defendants moved to strike (1) certain allegations about Defendant Government Employees, (2) allegations about non-defendant GEICO entities, and (3) allegations about third-party claimants.  (*See* Defs. Mot., Dkt. 42, at 22–24.)  After the R&R recommended that none of these allegations be struck (*see* R&R, Dkt. 80, at 20–21, 23), Defendants raised no objections as to the first two sets of allegations (*see* Defs. Obj., Dkt. 86, at 15–16 (objecting only to R&R's "fail[ure] to strike certain allegation regarding third-party claimants")).  Therefore, the Court adopts the R&R's reasoning in this respect because there was no error on its face.  *See Romero*, 2017 WL 1180518, at *2 (A district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous.").

1.   Objection 4: The R&R Treats Third-Party Claimants as Consumers

However, Defendants vigorously object to Judge Wicks's recommendation not to strike the third-party claimant allegations, arguing that the R&R "contravenes black-letter law that third party claimants are not consumers under GBL § 349." (Defs. Obj., Dkt. 86, at 1–2).[22]  In making

---

[22] In their motion papers, Defendants advanced another argument for striking the class allegations, namely that "Plaintiffs' first-party claims are not typical of [the] claims of [the] third-

his recommendation, Judge Wicks relied on the recent New York Court of Appeals decision in *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, which interpreted the scope of the GBL Section 349.  *See* 37 N.Y.3d 169 (N.Y. 2021).  Judge Wicks found that *Himmelstein* articulated an "expansive interpretation of Section 349" that "undermines Defendants' narrow reading of Section 349."  (R&R, Dkt. 80, at 25.)  Defendants contend that *Himmelstein* is inapposite, noting that the issue in that case was whether the product in question "was not consumer-oriented because it was targeted toward legal professionals, not consumers at large." (Defs. Obj., Dkt. 86, at 16.)

The Court denies Defendants' motion to strike the third-party class allegations and finds that *Himmelstein* is instructive.[23]  Although *Himmelstein* does not directly address the issue raised by Defendants of whether third-party claimants can bring GBL Section 349 claims, the Court agrees with the R&R's application of the principles articulated by the Court of Appeals to this case.  In *Himmelstein*, the New York Court of Appeals emphasized that the New York state legislature sought "to ensure the broadest enforcement of [GBL Section 349]," and that "Section 349, on its face, applies to virtually all economic activity."  *Himmelstein*, 37 N.Y.3d at 176

---

party claimants." (*See* Defs. Mot., Dkt. 42, at 23.)  The R&R determined that these "arguments [that] center around Plaintiffs' ability to satisfy the class certification requirements of Rule 23" are premature at this stage of the litigation. (*See* Defs. Obj., Dkt. 80, at 24–25.)  Because Defendants did not object to that portion of the R&R, the Court adopts the R&R in this respect because there was no error on its face.  *See Romero*, 2017 WL 1180518, at *2 (A district court "may adopt those portions of the [r]eport to which no objections have been made and which are not facially erroneous."); *see also Chen-Oster*, 877 F. Supp. 2d at 117 (finding a motion to strike class allegations as premature if it does not "address[] issues separate and apart from the issue that will be decided on a class certification motion").

[23] Since these objections largely "reiterate[]" the arguments made in the underlying motion papers, the Court would be justified in applying clear error review.  *See Saleh*, 393 F. Supp. 3d at 177.  However, given that *Himmelstein* was recently decided and that there are several lawsuits involving GBL Section 349 claims against automobile insurance companies with the same factual allegations, the Court explains in greater detail why it agrees with and adopts Judge Wicks's analysis and application of *Himmelstein*.

(quotation marks and brackets omitted).  According to *Himmelstein*, the "text and purpose" of GBL Section 349 supports the notion that "an act or practice is consumer-oriented when it has 'a broader impact on consumers at large.'"  *Id.* at 177 (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25–27 (N.Y. App. Div. 1995)).

Here, Defendants incorrectly and categorically assert that any "interaction with a third-party claimant is not 'consumer-oriented conduct'" simply because a "third-party claimant is not evaluating or exercising market options."  (Defs. Mot., Dkt. 42, at 24.)  Instead, the Court agrees with Judge Wicks that adopting Defendants' restrictive reading of GBL Section 349 would contravene *Himmelstein*'s expansive view that, under the statute, "an act or practice is consumer-oriented when it has a broader impact on consumers at large."  (*See* R&R, Dkt. 80, at 24–25 (quoting *Himmelstein*, 37 N.Y.3d at 177).)  Defendants also cannot plausibly claim now that *Himmelstein* is inapposite, given their previous argument in moving to dismiss that the "consumer-oriented" element of GBL Section 349 must be consistent with the term "consumer" as it is defined elsewhere "under New York law."  (*See* Defs. Mot., Dkt. 42, at 24.)  *Himmelstein* squarely rejects that argument, specifically holding that reliance on "other statutory definitions of 'consumer' or 'consumer good'" to interpret the scope of GBL Section 349 "is misplaced."[24]  37 N.Y.3d at 177.

---

[24] To advance this argument that courts should interpret "consumer-oriented" conduct in light of other statutory definitions of consumer, Defendants include the following quote from a New York State Supreme Court case: "[U]nder New York law, the term consumer is consistently associated with an individual or natural person who purchases goods, services, or property primarily for personal, family, or household purposes."  (*See* Defs. Mot., Dkt. 42, at 24 (ultimately quoting *Polish & Slavic Fed. Credit Union v. Saar*, 963 N.Y.S.2d 556, 564 (N.Y. Sup. Ct. Kings Cnty. 2013))).  However, this quote from *Polish & Slavic Fed. Credit Union* is itself a quote from *Cruz v. NYNEX Info. Resources*, 703 N.Y.S.2d 103 (N.Y. App. Div. 2000).  *Himmelstein* specifically abrogated *Cruz* in holding that other statutory definitions of "consumer" cannot be relied on to interpret the scope of GBL Section 349, which further underscores why *Himmelstein* is applicable here.  *See Himmelstein*, 37 N.Y.3d at 177.

The Court's decision to reject this Objection is further supported by the fact that Judge Wicks's interpretation is consistent with how other courts in this Circuit have understood the scope of GBL Section 349.  *See, e.g.*, *Kronenberg*, 2020 WL 1234603, at *1 (finding that car accident plaintiff alleged sufficient facts to survive a motion to dismiss his GBL Section 349 claim against the other driver's insurance company)[25]; *Volino*, 2022 WL 5242874, at *6 (similar).  And it is not lost upon the Court that Defendants have not put forth a single case in either their motion to dismiss papers or their objections holding that third-party claimants cannot bring GBL Section 349 claims against insurance companies.  (*See* Defs. MTD, Dkt. 42, at 23–24; Defs. Mot. Reply, Dkt. 44, at 9–10; Defs. Obj., Dkt. 86, at 15–16; Defs. Reply, Dkt. 90, at 5–6.)[26]  Because Defendants have not persuasively distinguished *Himmelstein* or provided any case law in support of their position, the Court declines to strike the third-party class allegations based on the record currently before it.

---

[25] Defendants argument that "*Kronenberg* did not consider whether a third-party claimant is a consumer[,]" but instead "concluded [that] a one-off transaction can be consumer-oriented conduct" (*see* Defs. Mot. Reply, Dkt. 44, at 10), is unconvincing.  The court in *Kronenberg* plainly understood that the plaintiff in that case was bringing "a third-party claim" against the defendant insurer, and was not a direct consumer (*i.e.*, an insured) of the defendant.  *See Kronenberg*, 2020 WL 1234603, at *4; *see also id.* at *5 (explaining in the context of an unjust enrichment claim that plaintiff's allegations arose "in the course of a *third-party settlement* with defendants whereby plaintiff was underpaid") (emphasis added).

[26] The only case that Defendants cite is *Manchanda v. Educ. Credit Mgmt. Corp.  See Manchanda*, No. 19-CIV-5121 (LGS), 2022 WL 137885 (S.D.N.Y. Jan. 14, 2022), *appeal docketed*, No. 22-142 (2d Cir. Jan. 24, 2022).  Defendants contend that this case stands for the proposition that there is "no consumer oriented conduct for alleged deceptive practices in servicing and collecting the plaintiff's consumer loan debt." (Defs. Obj., Dkt. 86, at 16.)  However, the district court in *Manchanda* found that mailing notice of the plaintiff's default to the incorrect address was not "consumer-oriented" conduct, because the "[p]laintiff has not offered any evidence that [d]efendants mailed notice to incorrect addresses for any other consumer."  2022 WL 137885, at *4.  Moreover, the district court found that the other allegedly deceptive conduct at issue was "tantamount to private contractual disputes that do not fall in the ambit of Section 349."  *Id.*  Therefore, the reasoning in *Manchanda* cannot be applied to the third-party class members whom Plaintiffs seek to represent, and *Manchanda* simply does not support Defendants' position that third-party claimants can never bring GBL Section 349 claims.

**CONCLUSION**

For the foregoing reasons, the Court finds no merit in any of Defendants' objections.

Accordingly, the Court adopts Judge Wicks's R&R in its entirety, and denies Defendants' motion

to dismiss, motion to strike, and request for appraisal.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 30, 2023
        Brooklyn, New York