**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

EVERETT SEE and SALVATORE
CRISTIANO, on behalf of themselves and all
others similarly situated.

　　　　　　　　*Plaintiffs*,


　　　　　-against-

GOVERNMENT EMPLOYEES
INSURANCE COMPANY d/b/a GEICO, and
GEICO GENERAL INSURANCE COMPANY,

　　　　　　*Defendants*.

------------------------------------------------------------------X

**FILED**
**CLERK**

7/21/2025 11:28 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM**
**AND ORDER**
21-cv-00547 (PKC) (JMW)

**A P P E A R A N C E S:**

　　　Hank Bates
　　　Tiffany Oldham
　　　Lee Lowther
　　　**Carney Bates & Pulliam, PLLC**
　　　519 W. 7th St. Little Rock, AR 72201

　　　　　-and-

　　　Thomas M. Mullaney
　　　**The Law Office of Thomas M. Mullaney**
　　　530 Fifth Ave, 23rd Floor
　　　New York, NY 10036
　　　*Attorneys for Plaintiffs*

　　　Dan W. Goldfine
　　　Jamie L. Halavais
　　　**Dickinson Wright PLLC**
　　　1850 N. Central Avenue, Suite 1400
　　　Phoenix, Arizona 85004
　　　*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

Everett See ("Mr. See") and Salvatore Cristiano ("Mr. Cristiano" and collectively, the "Plaintiffs") commenced this class action on behalf of themselves and all others similarly situated against Government Employees Insurance Company ("Government Employees") and its subsidiary GEICO General Insurance Company ("GEICO General") (collectively, the "Defendants") asserting breach of contract and violations of New York General Business Law ("NY GBL") § 349. (*See generally* ECF No. 21.) Before the Court now is Plaintiffs' Motion for Leave to File its Second Amended Complaint (ECF No. 119), Defendants' Opposition (ECF No. 120), and Plaintiffs' Reply (ECF No. 121). For the reasons set forth below, Plaintiffs' Motion for Leave to file a Second Amended Complaint is **GRANTED**.

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from the Amended Complaint. (*See generally* ECF No. 21.) Defendants are insurance companies and subsidiaries of the brand GEICO, who conduct business within New York. (*Id.* at ¶¶ 17-22.) Both named Defendants have their headquarters located in Maryland and are interrelated for the work they provide for GEICO. (*Id.* at ¶¶ 12, 17-22.) On September 18, 2020, Plaintiff Mr. See, a New York resident, was involved in a three-car accident resulting in the total loss of his vehicle. (*Id.* at ¶¶ 1, 10, 15.) In connection with Plaintiff's insurance policy, Defendants settled Plaintiff's claims when they purported to pay the "actual cash value of his vehicle." (*Id.*) Two years prior, on October 6, 2018, Plaintiff Mr. Cristiano, a New York resident, was also involved in an accident, which resulted in total loss and Defendants, likewise, purported to pay the "actual cash value" of his vehicle. (*Id.* at ¶¶ 2, 11, 16.)

As alleged, Defendants for each claim "used valuation reports provided by CCC Information Services, Inc. ("CCC") to, in theory, fairly and accurately assess the value of

2

Plaintiffs' loss vehicles." (*Id.* at ¶ 3.) Plaintiffs allege that these reports misrepresent the actual cash value for the loss vehicles and are undervalued. (*Id.*) That is because "CCC's reports scrutinize and itemize the condition of claimants' loss vehicles across nine components (mechanical, tires, paint, etc.), comparing them to "Average Private condition" and making monetary adjustments accordingly." (*Id.* at ¶ 4.) The Complaint further alleges that the reports indicate the vehicles to a better condition than the "Average Private condition" without any inspection documents. (*Id.*) Allowing these deceptive practices results in valuation reductions and offering lower cash values for totaled vehicles. (*Id.*) That is what happened with Plaintiff Mr. See. "[I]n determining the value of Mr. See's loss vehicle, Defendants, using a CCC report, performed the nine-component inspection and determined that five components of his loss vehicle were in 'Average Private' condition and that the remaining components were in 'Dealer Retail' condition." (*Id.* at ¶ 5.)

Mr. See submitted a property damage claim to Defendants, who deemed the vehicle a total loss and, based on the valuation report, determined its actual cash value to be $9,513 and paid the claim accordingly. (*Id.* at ¶ 38.)  "Defendants represented that the base value of Mr. See's totaled vehicle was *increased* by $216 based on the condition of his loss vehicle[]" however, "[i]n reality, the value of Mr. See's total loss vehicle was *decreased* based on a condition adjustment". (*Id.* at ¶¶ 5, 32) (emphasis in original). The Complaint further alleges the same practices occurred to Mr. Cristiano when based on the valuation report provided by CCC, Defendants determined the actual cash value of the totaled vehicle was $11,885 resulting in an undervaluation of $986. (*Id.* at ¶¶ 7, 39.)  Therefore, because the CCC report "deducted $986 from the advertised price of each comparable vehicle as an adjustment for 'Condition[,]'" this meant, the value of Mr. Cristiano's vehicle was *reduced* by $986. (*Id.* at ¶ 51.)  "This negative

condition adjustment is not disclosed in the Report Summary of the valuation report or in the Total Loss Settlement Explanation." (*Id.*)

In both cases, Defendants allegedly never disclosed the negative condition adjustments within the reports, instead, "Defendants deceptively inform the reader that the condition of each comparable vehicle was 'set' to 'Average Private Condition' when, in truth, the condition was set to an undescribed and undisclosed condition deemed more valuable, resulting in a significant negative condition adjustment ($706 for Mr. See and $986 for Mr. Cristiano)." (*Id.* at ¶ 54.) As a result of Defendants' conduct, Plaintiffs commenced this class action seeking monetary and injunctive relief as well as attorneys' fees for breach of contract and violations of New York General Business Law. (*Id.* at ¶ 9.)

## II.      **Procedural Background**

On February 2, 2021, Defendants filed a Notice of Removal.[1] (ECF No. 1.) Plaintiff commenced the action asserting claims for (i) breach of contract alleging that Defendants' utilization of evaluation reports with condition adjustments undervalued the "actual cash value of the claimants loss," and (ii) violations of New York General Business Law ("NY GBL") § 349, alleging that the condition adjustments which undervalued the vehicles' "actual cash value" was "hidden, misrepresented, and unfounded" such that it constitutes a "deceptive practice." (ECF No. 1-2 at ¶¶ 52-67.)

This latest motion comes after many attempts of amendments throughout the last four years. The Defendants moved to dismiss and strike the Original Complaint (ECF Nos. 13-14), which was rendered moot due to Plaintiff filing a timely amended complaint. (ECF No. 21.) This amendment added Salvatore Cristiano as an additional Plaintiff. (*Id.*; Electronic Order dated

---

[1] The action was first commenced in the Supreme Court of Nassau County by Plaintiff See. (*Id.*)

3/8/2021.) Defendants once again moved to dismiss and strike the Amended Complaint. (ECF Nos. 28-29, 41-44.) On July 20, 2021, the parties stipulated to a briefing schedule for the Second Amended Complaint, and the parties filed the fully submitted briefs. (ECF Nos. 49, 58-61.) However, on November 1, 2021, Plaintiffs requested a pre-motion conference in connection with their intent to file a superseding second amended complaint. (ECF No. 62.) At that pre-motion conference, the parties agreed that they would confer and inform the Court if the parties would stipulate to the filing the superseding Second Amended Complaint. (ECF No. 64.) Unfortunately, the parties could not agree to stipulate, and yet another briefing schedule was set, followed by the motion papers. (ECF Nos. 65, 68-70.) On February 11, 2022, the undersigned provided notice to the parties that the Court intends to convert the motion to dismiss (ECF No. 42) to a summary judgment motion only as to the branch concerning the "appraisal" of the loss vehicles and allowed the parties to submit any additional materials necessary for the motion. (Electronic Order dated 2/11/2022.)

Upon the additional filings (ECF Nos. 71-77), the undersigned recommended denial of Defendants' motion to dismiss, motion to strike, and motion for summary judgment on the appraisal issue. (ECF No. 80.) During this time, Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 68) was denied with leave to renew upon a decision on the pending Report and Recommendation ("R&R). (Electronic Order dated 8/10/2022.) Following objections to the R&R (ECF Nos. 86-90), Hon. Judge Pamela K. Chen adopted the R&R. (ECF No. 92.) Throughout the litigation and up until this point, no scheduling order was issued. On April 13, 2023, a Status Conference was held, and a Scheduling Order was issued. (ECF Nos. 95-96.) Shortly after, Defendants filed an appeal. (ECF No. 99.) Due to the appeal, the proceedings were stayed and any motions, including this one were terminated. (ECF Nos. 104-

111; Electronic Orders dated 6/28/2023; 8/2/2023.) On March 20, 2025, the parties informed the Court that on March 13, 2025, the Second Circuit affirmed this Court's decision and that the stay was therefore vacated. (ECF Nos. 117-18.) As a result, the Court directed the parties to refile the instant motion.[2]  (ECF Nos. 119-21.)

## THE LEGAL FRAMEWORK

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Under Rule 15—which applies here since the motion to amend was filed before any deadline passed—"the court should grant such leave 'freely… when justice so requires'" pursuant to Rule 15(a)(2).[3]  Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co., Inc. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021) (citations omitted) ("This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'"); *see*

---

[2] This motion is on referral from Judge Chen.  The courts within this Circuit generally approach motions to amend as dispositive if denying but non-dispositive if granting. *See e.g., Pusepa v. Annucci*, No. 17-CV-7954 (RA) (OTW), 2024 WL 4579450, at *1 (S.D.N.Y. Oct. 25, 2024) ("A magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.");  *Portelos v. City of New York*, No. 12 Civ. 3141 (RRM) (VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sept. 15, 2015) ("[D]istrict courts in this circuit have generally found that denial of a motion to amend is dispositive, whereas granting a motion to amend is non-dispositive."). Accordingly, because the motion is being granted, the Court proceeds by Order rather than Report and Recommendation.

[3] Here, two Rule 26(f) Scheduling Orders were entered. However, the first was issued for the purpose of limited discovery while the motion to dismiss was pending, which did not include a date to amend the pleadings or add new parties. (ECF No. 39.) The second likewise did not include a provision setting forth a date to amend the pleadings. (ECF No. 96.) Thus, Rule 16 is not implicated here, and accordingly, the motion is considered under Rule 15(a)(2).

*also Reyes v. Yager Esthetics Estetica*, No. 24-cv-3206 (JGK) (VF), 2025 WL 1156761, at *2 (S.D.N.Y. Apr. 21, 2025) ("Rule 16, however, does not apply here because Plaintiff filed his motion within the deadline set by the Court's scheduling order.")

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019). However, the burden to explain the delay rests with the movant. *Pilkington N. Am., Inc. v. Misui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021). The moving party must attach the proposed amended complaint to the motion, which has been satisfied here, specifying the new claims and/or parties intended to be added. (*See* ECF No. 119-1); *see also Ghaly v. Nissan Motor Acceptance Corp.*, No. 21-CV-01613(JS)(JMW), 2021 WL 2550389, at *1 (E.D.N.Y. June 22, 2021); *ANEES KHAN, Plaintiff, v. K1 INVESTMENT MANAGEMENT LLC; TRACKFORCE, INC., a subsidiary of Trackforce Top. Co. doing business as TRACKFORCE VALIANT, Defendants.*, No. 24-CV-07860 (JMW), 2025 WL 1808725, at *2 (E.D.N.Y. July 1, 2025). Indeed, "[i]t is 'within the sound discretion of the district court to grant or deny leave to amend.'" *Pierre v. Cnty. of Nassau*, No. 17-CV-6629 (LDH) (RER), 2022 WL 2872651, at *4 (E.D.N.Y. July 21, 2022) (quoting *Hart v. Suffolk Cnty.*, No. 17-CV-5067 (JS) (SIL), 2020 WL 4738243, at *2 (E.D.N.Y. Aug. 15, 2020)).

Moreover, "Rule 21 is implicated along with Rule 15 because Plaintiff[s] seek to add [] additional [parties]." *Xianghe Cnty. Yibang Furniture Co. v. Liu*, No. 20-CV-5267 (NJC) (JMW), 2024 WL 2222200, at *6 (E.D.N.Y. Apr. 9, 2024), *report and recommendation adopted sub nom. Xianghe Cnty. Yibang Furniture Co. v. Hong Liu*, No. 2:20-CV-5267 (NJC) (JMW), 2024 WL 2214555 (E.D.N.Y. May 16, 2024) (quoting *Drossos. Zucker v. Porteck Glob. Servs., Inc.*, No.

13-CV-2674 JS AKT, 2015 WL 6442414, at *5 (E.D.N.Y. Oct. 23, 2015)). Fed. R. Civ. P. 21 provides "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Thus, in these circumstances, "courts apply the 'same standard of liberality afforded to motions to amend pleadings under Rule 15.' [L]eave to amend a complaint to assert claims against additional defendants 'should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court.'" *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011) (internal citations omitted); *GB v. Town of Hempstead*, No. 17-6625 (JMA)(ARL), 2025 WL 1029439, at *4 (E.D.N.Y. Feb. 10, 2025), *report and recommendation adopted*, No. 17-CV-06625 (JMA) (ARL), 2025 WL 719125 (E.D.N.Y. Mar. 6, 2025) (same).

It is within this legal framework that the Court analyzes the motion.

## DISCUSSION

Plaintiff seeks leave to amend the Complaint by (i) adding two named Plaintiffs, Edwin Nahm ("Nahm") and Samantha Milner-Koonce ("Milner-Koonce"), (ii) adding a defendant, GEICO Indemnity Insurance Company ("GEICO Indemnity"), a subsidiary of Government Employees Insurance Company, an already named Defendant, and (iii) adding two additional claims "related to Defendants' underpayment of sales tax owed to insureds who leased their total loss vehicles (a breach of contract claim in proposed Count III and a [NY GBL] § 349 claim in proposed Count IV." (ECF No. 119 at 1.) Defendants challenge the proposed amendment on futility grounds, while at the same time arguing that this amendment is untimely and unduly prejudicial (ECF No. 120 at 1.)

I.      **<u>Undue Delay, Bad Faith, and Prejudice</u>**

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (emphasizing prejudice and bad faith over delay).  Ordinarily, where the moving party's fails to provide a detailed explanation as to why the proposed amendments could not have been alleged previously, a court will assume there was undue delay. *Perez v. Escobar Construction, Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. Nov. 29, 2022).

Defendants argue that Rule 16(b)(4)'s standard of good faith has not been satisfied. (ECF No. 120 at 18.)  Rule 16 is not implicated here as the 26(f) Scheduling Orders (ECF Nos. 39, 96) did not include end dates to amend the pleadings. As such, Plaintiffs are not required to satisfy the higher good cause standard, and the application is instead considered under Rule 15's more liberal standard. (ECF No. 121 at 2-3.) Moreover, Plaintiffs multiple attempts to amend their Complaint (now four times), *see* ECF Nos. 58[4], 68, 106, 119, were thwarted for various procedural reasons which undermine any claim of undue delay.

Next, prejudice to the nonmoving party is perhaps the most important factor when determining whether to grant a claimant's leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo*, 514 F.3d at 191. When considering whether the opposing party may be prejudiced, courts consider whether the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Block*, 988 F.2d at 350. "The degree of potential prejudice a motion

---

[4] The proposed amendment at ECF No. 58 was withdrawn and superseded by ECF No. 68.

to amend may cause is evaluated against the overall progress of the litigation: the closer to the end of discovery or the closer to trial a motion to amend is filed, the more likely that it will cause prejudice and delay to the nonmoving party." *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-CV-6717 (NSR)(LMS), 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018).

As Plaintiffs correctly state "[d]iscovery was significantly curtailed during the pendency of Defendants' motions to dismiss, to strike, and for summary judgment, and stayed during Defendants' appeal." (ECF No. 119 at 11-13.) Likewise, although this is a four-year-old case, discovery itself is in the nascent stage. Plaintiffs argue that any additional discovery would not cause undue burden as "Defendants have been on notice of Plaintiffs' intention to assert a breach of contract claim and a claim for violation of GBL § 349 resulting from Defendants' total loss settlement practices in this Action since the filing of the Original Complaint." (ECF No. 121 at 10.) On the other hand, Defendants argue that the amendment "improperly expand[s] the purported class periods and purported classes, causing undue prejudice to Defendants and the proposed new defendant GEICO Indemnity." (ECF No. 120 at 19.) And, allowing this amendment would prejudice Defendants with new discovery burdens, additional theories and "the threat of a potentially expanded class period." (*Id.*) Additionally, Defendants assert that Plaintiffs should have included these claims when the first amendment was filed and the absence of doing so stems from their own lack of due diligence. (ECF No. 120 at 18.) Whereas Plaintiffs contend that this information was only uncovered through their due diligence and investigation during the discovery conducted. (ECF No. 119 at 2.)

Additional discovery does indeed weigh heavily on this factor. *See Coggins v. Cnty. of Nassau*, 254 F. Supp. 3d 500, 508–09 (E.D.N.Y. May 26, 2017) (collecting cases where prejudice stemmed from the proposed amendment considering it would require reopening discovery,

10

thereby resulting in further delay in resolving the matter). Yet, as little to no discovery has been conducted due to the other motions that were previously pending including the stay that was issued (*see* Electronic Order 6/28/2023), additional burdens, if any, are not enough to warrant denial. Moreover, Defendants' arguments seem to be based on "the threat of [potential]" burdens. (ECF No. 120 at 19.) Thus, this factor weighs in favor of granting the proposed amendment.

As for bad faith, "a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *AA Med. P.C. v. Almansoori*, No. 20-CV-03852 (DG) (JMW), 2023 WL 7688688, at *6 (E.D.N.Y. Oct. 4, 2023), *report and recommendation adopted*, No. 20-CV-03852 (DG) (JMW), 2024 WL 168332 (E.D.N.Y. Jan. 16, 2024) (citing *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388 (JFB) (SIL), 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017). Here, nothing in the record supports a finding of bad faith and Defendants do not argue this factor.

The Court now turns to whether the proposed amendments are futile which alone could warrant denial of Plaintiffs' motion. *See Reynolds v. Rockaway HD LLC*, No. 21-CV-05408 (NRM) (TAM), 2023 WL 11872630, at * (E.D.N.Y. Mar. 23, 2023) (denying a motion to amend, stating "[w]hatever the potential prejudice to Plaintiff, the Court finds that Defendant's proposed amendment is futile.").

## II.    Futility

Defendants argue that the proposed amendment would be futile because (i) the additional counts fail as a matter of law, (ii) the proposed amendment "continues to conflate GEICO General, Government Employees, and GEICO Indemnity's alleged conduct, using improper group pleading, despite Defendants repeatedly demonstrating these are separate legal entities[;]"

11

(iii) the amendment contains third-party claims, which neither the current Plaintiffs nor the proposed additional plaintiffs may bring; and (iv) this amendment contains the same "uncured fatal deficiencies" as the operative complaint did.[5] (ECF No. 120 at 1-2.)

An amendment is futile if the proposed claim could not withstand a motion to dismiss under Fed. R. Civ. P. § 12(b)(6). *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "One appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir. 2002); *see also In re Curaleaf Holdings, Inc. Sec. Litig.,* 519 F. Supp. 3d 99, 111 (E.D.N.Y. Feb. 15, 2021) ("[A] court need not grant leave to amend if amendment would be futile."). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which courts are to apply a two-pronged approach in analyzing a motion to dismiss, or in this case, to amend. *See Smith v. Westhab Traverse House*, No. 24-CV-4961 (KMW), 2025 WL 1589422, at *1 (S.D.N.Y. June 4, 2025) (quoting *Iqbal*, 556 U.S. at 678-79.) ("In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, but it does not have to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"); *Nicolosi v. BRG Sports, Inc.*, No. 16-CV-2910 (SJ) (CLP), 2019 WL 5695852, at *7 (E.D.N.Y. Aug. 21, 2019) ("the question for this Court on a motion to amend is whether the proposed Amended Complaints satisfy the minimal pleading standards of *Iqbal* and *Twombly*.")

District courts are to first "identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Though "legal

---

[5] Despite Defendants' assertion that Plaintiffs conflate the separate defendant entities, Plaintiffs allege that these parties are interrelated and as such, the Court assumes the truth of the pleadings at this stage. (*See* ECF No. 119-1 at ¶¶ 26-32.) Additionally, Defendants assert conclusory statements rather than rebutting Plaintiffs' allegations. (*See* ECF No. 120 at 21-22.)

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 663. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

The futility branch is ofttimes the death knell on a contested motion to amend. *See e.g., Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL), 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("In this case, there is no evidence of undue delay, bad faith, dilatory motive, or prejudice to Defendant. However, granting leave to amend would be futile because the [pleading], even with further amendments could not survive a 12(b)(6) motion[]"); *McGrath v. Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *8 (S.D.N.Y. Feb. 26, 2021) (internal citations and quotations omitted) ("[L]eave to amend may independently be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim . . . ."); *see also Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202 (LGS) (HBP), 2013 WL 3718071, at *9 (S.D.N.Y. July 15, 2013) (noting the motion to amend could have been denied based on futility alone because the potential claims lacked specificity and authority, and were otherwise meritless).

Defendants, as the party opposing the amendment, bear the burden of proving futility. *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-CV-03685 (SJF) (SIL), 2016 WL 11481193, at *7 (E.D.N.Y. Sept. 30, 2016). As such, when a party objects to a motion to amend

on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-CV-1608 (RJH) (JCF), 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation marks omitted).

i. ***Additional Parties***
   a. ***Adding Nahm and Milner-Koonce as Named Plaintiffs***

The proposed amendment seeks to add Plaintiffs Nahm and Milner-Koonce. As alleged, both Nahm and Milner-Koonce are domiciled in New York and have contracted with Defendants. (ECF No. 119-1 at ¶¶ 24-25.) These two parties were also involved in car accidents and allege the same conduct as the original Plaintiffs in connection with Defendants' conduct post-accident. (*See id.* at 10-22.) Likewise, Causes of Action I and II have already survived a Motion to Dismiss before this Court. (ECF Nos. 80, 92.) Thus, adding these parties as named plaintiffs would not strip this Court of jurisdiction since diversity between plaintiffs and defendants remain. Accordingly, Nahm and Milner-Koonce may be added.

   b. ***Adding GEICO Indemnity as a Named Defendant***

Next, Plaintiffs seek to add Defendant GEICO Indemnity as a named defendant. As alleged, GEICO Indemnity "is a subsidiary of Government Employees and markets collectively under the trademark "GEICO." GEICO Indemnity provides policies of automobile insurance in the State of New York [and] … pays property-damage claims to residents of the State of New York, including Plaintiffs." (ECF No. 119-1 at ¶ 32.) Defendants argue that GEICO Indemnity should not be added as Plaintiffs continue to conflate the different entities and allege that they are separate entities. (ECF No. 120 at 2.) Further, Defendants state that there is no agency relationship between any of the parties. (*Id.* at 21.) As discussed *supra*, despite the Defendants' assertion that Plaintiffs conflate the separate defendant entities, Plaintiffs allege that these parties are interrelated and as such, the Court assumes the truth of the pleadings at this stage. (ECF No.

14

119-1 at ¶¶ 26-32.) Additionally, Defendants assert conclusory statements rather than rebutting Plaintiffs' allegations. (ECF No. 120 at 21-22.)

As alleged, this party shares the same headquarters as the remaining Defendants, and therefore, diversity would remain.  (ECF No. 119-1 at ¶ 32.) Lastly, Defendants state that "'GEICO Indemnity Insurance Company' is not an entity—GEICO Indemnity Company issued the insurance policy to proposed new plaintiff Milner-Koonce." (ECF No. 120 at 1 n.2.) If Plaintiffs are incorrect with the spelling of the proposed named Defendant, they are to correct it upon the granting of this motion. Accordingly, GEICO Indemnity may be added as a named defendant.

ii.    **_Failure to State a Claim_**
    a.    **_Proposed Cause of Action III - Breach of Contract on behalf of Plaintiffs Cristiano and Nahm against Defendants Government Employees and GEICO General_**

First and foremost, as this is a diversity case "where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry." *Barlow v. Gov't Emps. Ins. Co.*, No. 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at *3 (E.D.N.Y. Sept. 29, 2020) (citing *Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013). Thus, New York law governs.

Here, Plaintiffs seek to add an additional claim of breach of contract for breach of non-payment of sales tax solely on behalf of Plaintiffs Cristiano and Nahm, and those class members who are yet to be identified against Defendants Government Employees and GEICO General. (ECF Nos. 119 at 14-15; 119-1 at ¶ 127.) Plaintiffs allege that according to both their policies and pursuant to New York law, the total loss of their vehicles should have included sales tax. (ECF No. 119 at 15.)

15

To rebut this assertion, Defendants focus on a 1984 General Counsel Opinion from the New York State's Department of Financial Services to illustrate that an insurance company does not need to include sales tax on totaled lease vehicles as the sales tax is paid on the lease agreement rather than the vehicle. (*See* ECF No. 120 at 8-9) (citing N.Y. General Counsel Opinion No. 5-4-84, 1984 WL 902056 (N.Y. Ins. Bul. May 4, 1984)). In response, Plaintiffs offer a later Opinion from 2008, which explicitly states "the amount of sales tax is added to the value of the vehicle prior to the accident, in accordance with the definition of actual cash value in § 216.6(b)(2) of 11 NYCRR 216 (Regulation 64), before the deduction for the salvage value is taken." (*See* ECF No. 119 at 15) (citing N.Y. General Counsel Opinion No. 10-30-2008, 2008 WL 4966645 (N.Y. Ins. Bul. Oct. 30, 2008)). The Complaint sufficiently alleges that the Policy provided provisions deeming a leased vehicle as an owned vehicle if it its leased for more than six months for which the insured pays a specific premium charge. (ECF No. 119-1, ¶¶ 82-89, Exhibit 11 at 9.) Moreover, Plaintiffs allege that both Cristiano and Nahm paid such charges and as such no provision in the policy allows Defendants not to pay Plaintiffs the sales tax. (*Id.* at ¶¶ 83-84; ECF No. 119 at 15.) Interestingly, nothing in Exhibit 11 that Plaintiffs point to includes paying for sales tax when assessing payments for the loss. (*See* ECF No. 119-1, Exhibit 11.) However, Plaintiffs do cite to cases in the Western District of New York, and Districts in Florida and Ohio for the proposition that sales tax should be included. (ECF Nos. 119 at 16-17; 121 at 6-7.)

To state a claim for breach of contract under New York law, a party must show "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Waldorf v. Waldorf*, 201 N.Y.S.3d 241, 242 (N.Y. App. Div. 2d Dep't 2023); *see also Nick's Garage, Inc. v.*

*Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (explaining that "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.")). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43 (N.Y. App. Div. 1st Dep't 2009; *see also Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 213 (S.D.N.Y. 2021) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d at 121) (same); *Express Indus. & Terminal Corp. v. New York State DOT*, 715 N.E.2d 1050, 1053 (N.Y. 1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.")

New York courts interpret insurance policies pursuant to general principles of contract law. *See 34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (quoting *Matter of Covert,* 761 N.E.2d 571 (N.Y. 2001) ("Also well-established is our treatment of an insurance policy as a contract, (subject to principles of contract interpretation'")); *see also Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp., Inc.*, 745 F. Supp. 3d 170, 183 (S.D.N.Y. 2024) (analyzing New York law) (internal citations omitted) ("insurance policies are analyzed as contracts generally, 'a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.'") "When a dispute arises involving the terms of an insurance contract, New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (collecting cases).

Defendants do not address *Marcelletti v. GEICO Gen. Ins. Co.*, 720 F. Supp. 3d 243 (W.D.N.Y. 2024), a case in point. There, Chief Judge Elizabeth A. Wolford reviewed whether or not Defendant's policy included a payment for sales tax. *Id.* at 247-250. The Court "conclude[d] that Plaintiff's interpretation of the policy as including sales tax within the scope of ACV is not unreasonable. At best, the policy is ambiguous as to whether it includes sales tax within the ACV for a total loss leased vehicle, necessitating denial of Defendant's motion to dismiss Plaintiff's breach of contract claim." *Id.* at 250. Thus, as here, the Defendant in that case raised the same arguments and the Court denied the motion to dismiss. *Id.* In another case, Judge Wolford again denied Defendant's motion to dismiss and while discussing *Marcelletti*. *See Shiloah v. GEICO Indem. Co.*, No. 24-CV-06447 (EAW), 2025 WL 790519, at *1 (W.D.N.Y. Mar. 12, 2025). In particular, the Court upon denial stated,

> That case involves the same attorneys as involved in the present litigation. Yet, surprisingly, GEICO's counsel avoided any reference to the *Marcelletti* decision in its motion to dismiss. … [F]or the same reasons that the Court already addressed in *Marcelletti*, it finds that Plaintiff's proffered interpretation of the policy is not unreasonable—to require actual cash value to include the payment of sales tax on a leased vehicle. As a result, the motion to dismiss must be denied.

(*Id.*)

Following the *Marcelletti* approach, there is ample support for the proposed amendment of Cause of Action III. Additionally, although in a different context, courts have determined that as of 2008 sales tax is included in the actual cash value when determining total loss of a vehicle. *See Barlow*, 2020 WL 5802274, at *6 (citing N.Y. General Counsel Opinion No. 10-30-2008, 2008 WL 4966645 (N.Y. Ins. Bul. Oct. 30, 2008) ("Accordingly, in calculating the actual cash value of a vehicle upon a total loss where the claimant elects to retain the salvage, the definition of actual cash value in § 216.6(b)(2) specifies that the cost of replacement includes sales tax. The salvage value of the insured vehicle upon a total loss is a deduction from its actual cash value

and, therefore, it is taken after the sales tax has already been added into the calculation of the vehicle's replacement cost.")).

As for the merits of this claim, Plaintiffs outline that Cristiano and Nahm were in a valid contract with Defendants when submitting their property damage claims, which is not disputed by Defendants. (ECF No. 119-1 at ¶¶ 128-29.) Plaintiffs also allege that during this time, Cristiano and Nahm performed their contractual obligations pursuant to their policies and yet, Defendants breached by failing to pay the sales tax. (*Id.* at ¶¶ 130-31.) This conduct resulted in Plaintiffs Cristiano and Nahm suffering damages in at least the amount of $1,196.37 and $1,214.92, respectively. (*Id.* at ¶ 132.) Therefore, the breach of contract cause of action is not futile.

  b. ***Cause of Action IV – Violation of NY GBL § 349 on behalf of Plaintiffs Cristiano and Nahm against Defendants Government Employees and GEICO General***

Plaintiffs seek to add an additional claim of violation of NY GBL § 349 on behalf of Plaintiffs Cristiano and Nahm, and those class members who are yet to be identified against Defendants Government Employees and GEICO General. (ECF Nos. 119 at 17-18; 119-1 at ¶ 139.) It is alleged that Defendants represented that Plaintiffs Cristiano and Nahm were to receive the actual case value for their total loss vehicles, while in fact paid none to Nahm and "only a fraction of the sales tax" to Cristiano. (ECF No. 119 at 18.)

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Lin v. Miracle Curtains, NY, Inc.*, No. 19-CV-5627 (VMS), 2022 WL 4386834, at *11 (E.D.N.Y. Sept. 22, 2022) (quoting N.Y. Gen. Bus. L. § 349(a)). Thus, a plaintiff must demonstrate "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered

injury as a result of the allegedly deceptive act or practice." *Id.* (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012))). Since the "standard for whether an act or practice is materially misleading is objective[,]" plaintiffs must make "a showing that a reasonable consumer would have been misled by the defendant's conduct." *See v. Gov't Emps. Ins. Co.*, No. 21-CV-547 (PKC) (JMW), 2023 WL 2731697, at *9 (E.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Milligan v. GEICO Gen. Ins. Co.*, No. 22-2950, 2025 WL 799276 (2d Cir. Mar. 13, 2025) (citing *Kronenberg v. Allstate Ins. Co.*, No. 18-CV-6899 (NGG) (JO), 2020 WL 1234603, *3 (E.D.N.Y. Mar. 13, 2020)). "Courts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss." *Id.* (quoting *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019) (cleaned up), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019)).

Similar to the Motion to Dismiss (ECF No. 42), Defendants primarily focus on elements two and three of NY GBL § 349, requiring materially misleading conduct and injury thereto. *See See v. Gov't Emps. Ins. Co.*, No. 21-CV-00547 (PKC) (JMW), 2022 WL 2467695, at *9 (E.D.N.Y. Mar. 22, 2022), *report and recommendation adopted*, No. 21CV547PKCJMW, 2023 WL 2731697 (E.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Milligan v. GEICO Gen. Ins. Co.*, No. 22-2950, 2025 WL 799276 (2d Cir. Mar. 13, 2025) ("Defendants' contentions in favor of dismissal are appropriately distilled into two arguments, namely that Plaintiffs have failed to adequately allege the materially misleading and injury prongs of a Section 349 claim. (DE 42 at 12–15.) The Court will address each argument in turn."). As this Court previously concluded, enough is pled here for a claim under NY GBL § 349.

First, as no party disputes consumer-oriented conduct, the Court finds this element is met. Especially since "Plaintiffs may satisfy the consumer-oriented conduct requirement by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *Kronenberg*, 2020 WL 1234603, at *3 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010)). Plaintiffs bring this claim on behalf of the class members yet to be identified for Defendants' deceptive practices. (ECF No. 119-1 at ¶¶ 14, 48, 134-37.) Consumer-oriented conduct occurs when it "has a broader impact on consumers at large as opposed to on just the plaintiff." *Vaglica v. Reckitt Benckiser LLC*, 699 F. Supp. 3d 200, 206 (E.D.N.Y. 2023) (quoting *Donnenfeld v. Petro*, Inc., 333 F. Supp. 3d 208, 222 (E.D.N.Y. 2018)). It is clear that Plaintiffs have shown that Defendants' conduct has potentially affected consumers at large, rather than the named plaintiffs alone. *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 07-CV-0187(JFB)(JO), 2007 WL 2288046, at *4 (E.D.N.Y. Aug. 8, 2007) (collecting cases) ("Where, as here, a defendant enters into "contractual relationship[s] with customers nationwide" via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and therefore satisfies the requirement of "consumer-oriented" conduct within the meaning of Section 349.") This can also be evidenced by the defendants' lack of attempt to argue otherwise. Thus, the first element is satisfied.

Second, "[w]hether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Chery v. Conduent Educ. Servs., LLC*, 18-CV-75, 2022 WL 179876, at *8 (N.D.N.Y. Jan. 20, 2022) (internal quotation marks and citation omitted); *see Kronenberg*, 2020 WL 1234603, at *3 ("The standard for whether an act or practice is materially misleading is objective; it requires a showing that a reasonable consumer would have been misled by the

21

defendant's conduct.") (internal quotation marks, brackets, and citation omitted). To satisfy the materially misleading element, a plaintiff need not allege that the defendant's conduct was intentionally misleading, only that it would be misleading or deceptive to a reasonable consumer. *See People v. Wilco Energy Corp.*, 728 N.Y.S.2d 471, 473 (N.Y. App. Div. 2d Dep't 2001).

Here, Plaintiffs allege that they were misled by Defendants. (ECF Nos. 119 at 18; 119-1 at ¶¶ 68, 70, 139; 121 at 9-10.) Specifically, "Defendants misrepresented to Plaintiffs Cristiano and Nahm (and members of the Sales Tax Gen. Bus. Law §349 Class and Subclass) that they were receiving actual cash value of their totaled vehicles despite the amount not including sales tax on the value of the loss vehicle."  (ECF No. 119-1 at ¶ 139.) Although this stage is not the proper time to determine reasonableness, the undersigned nonetheless finds that Plaintiffs have shown that such misleading representations is enough to plead the second element. See *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019) (citation and quotation marks omitted) (alterations adopted), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019) (Because the inquiry hinges on the reasonableness of a consumer, "[c]ourts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss."); *But see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (noting that "a court *may* determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer") (emphasis added).

Lastly, Plaintiffs "must ... plead that they have suffered actual injury caused by a materially misleading or deceptive act or practice." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S. 2d 96, 104 (N.Y. App. Div. 2d Dep't 2012) (quoting *City of New York v. Smokes–Spirits.Com, Inc.,* 911 N.E.2d 834 (N.Y. 2009)). Here, Plaintiffs allege that due to

22

Defendants' misleading conduct, Plaintiffs Cristiano and Nahm, and class members have "incurred damages, including actual damages in the amount of the sales tax they were owed but did not receive, statutory damages under N.Y. Gen. Bus. Law § 349(h) where applicable, treble damages up to $1,000 under N.Y. Gen. Bus. Law § 349(h) where applicable, and pre-judgment interest." (ECF No. 119-1 at ¶ 140.)

Therefore, the NY GBL § 349 cause of action is not futile.

### iii.    *Third-Party Claims*

As a final matter, Defendants argue futility in that Plaintiffs may not set forth allegations on behalf of third-party claimants; nor may the proposed class representatives be able to represent such claims. (ECF No. 120 at 22-23.) Specifically, Defendants posit that

> Plaintiffs' and the proposed new plaintiffs' claims are based on first-party insurance claims each submitted to his or her insurer. Proposed SAC ¶¶ 1-4. Plaintiffs' proposed "Gen. Bus. Law §349" classes and subclasses purport to include nonparties to any insurance agreement who made a claim against a policy issued by GEICO General, Government Employees, or GEICO Indemnity (i.e., "[a]ll persons who made a claim on a policy of insurance"). Id. ¶ 96. The interactions between an insurance company and its insured and those between an insurance company and an adverse-third-party claimant are different. See, e.g., N.Y. COMP. CODES R. & REGS. tit. 11, § 216.7 (2021) (requiring insurers to meet specific deadlines when processing first-party but not third-party property damage claims). Thus, commonality and typicality are inherently lacking between the proposed putative class representatives' alleged claims and any alleged claims of third-party claimants.

(*Id.* at 22.)

However, Plaintiffs have not yet moved for class certification. As such, that argument is premature and the Court will determine the merits of the class moving forward in such a capacity once that motion, if any, is before the Court.[6]

---

[6] In fact, on March 21, 2025, the Court set deadlines for the remaining discovery of this matter, which included the deadline for Plaintiffs to move for class certification as June 19, 2026. (*See* Electronic Order dated 3/21/2025.) Thus, Defendants will have ample opportunity to oppose such a motion, when and if filed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Leave to file the Second Amended

Complaint (ECF No. 119) is **GRANTED**.

Dated:  Central Islip, New York.
        July 21, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

24