UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EVERETT SEE, *on behalf of himself and all
others similarly situated*, *et al.*,

                       Plaintiffs,

              - against -

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO GENERAL
INSURANCE COMPANY, and GEICO
INDEMNITY COMPANY,

                      Defendants.

--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-0547 (PKC) (JMW)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Everett See ("See"), Salvatore Cristiano ("Cristiano"), Edwin Nahm ("Nahm"),

and Samantha Milner-Koonce ("Milner-Koonce") initiated this action on behalf of themselves and

all others similarly situated, alleging breach of contract and deceptive acts or practices in violation

of New York's General Business Law ("GBL") § 349, against Defendants Government Employees

Insurance Company d/b/a GEICO ("GEICO"), GEICO General Insurance Company ("GEICO

General"), and GEICO Indemnity Company ("GEICO Indemnity") (collectively, "Defendants"[1]).

(*See generally* Second Am. Class Action Compl. ("SAC"), Dkt. 123.)  Currently before the Court

---

[1] Because GEICO General and GEICO Indemnity are subsidiaries of GEICO, Plaintiffs
plead their claims against all three Defendants collectively.  (*See, e.g.*, SAC, Dkt. 123, ¶ 41.)
Although Defendants oppose this collective pleading, (*see* Mot. to Dismiss ("MTD"), Dkt. 148,
at 22), the Court previously held that See and Cristiano had "alleged sufficient facts for this Court
to find that an agency relationship existed between GEICO General and GEICO." *See v. Gov't
Emps. Ins. Co.*, No. 21-CV-0547 (PKC) (JMW), 2023 WL 2731697, at *12 (E.D.N.Y. Mar. 30,
2023) (hereinafter, the "*2023 Decision*"), *adopting See v. Gov't Emps. Ins. Co.*, No. 21-CV-0547
(PKC) (JMW), 2022 WL 2467695, at *1 (E.D.N.Y. Mar. 22, 2022) (hereinafter, "*2022 R&R*"),
*aff'd sub nom. Milligan v. GEICO Gen. Ins. Co.*, No. 22-2950, 2025 WL 799276 (2d Cir. Mar. 13,
2025) (summary order).  As discussed *infra*, there is no need to disturb that previous finding.

is Defendants' motion to dismiss the SAC or, in the alternative, strike certain allegations, (*see* Dkts. 148–50); Defendants' appeal of Magistrate Judge James M. Wicks' order granting Plaintiffs leave to file the SAC, (*see* Dkts. 125, 126, 128); and Defendants' appeal of Judge Wicks' order denying reconsideration of his order regarding various discovery motions, (*see* Dkts. 136, 143, 147, 151). For the reasons that follow, the Court denies Defendants' motion to dismiss, motion to strike, and appeals.

## BACKGROUND

Given the extensive briefing in this matter, the Court assumes the parties' familiarity with the underlying facts and summarizes below only those necessary to decide the motions currently pending. *See 2023 Decision*, 2023 WL 2731697, at *1–4.

## I.    Factual Background[2]

Between May 19, 2018, and September 18, 2020, Plaintiffs were involved in car accidents while covered by at least one Defendant for automobile insurance. (SAC, Dkt. 123, ¶¶ 22–25.) All sustained physical damage to their vehicles and made property-damage claims to Defendants. (*Id.* ¶¶ 37–41.) "Defendants declared each Plaintiff's vehicle to be a total loss and purported to offer each of them the actual cash value of his or her loss vehicle, as was required under the uniform provisions of Defendants' insurance policies." (*Id.* ¶ 42.)

Defendants calculated the actual cash value, or "ACV," of each vehicle "by employing a routine total loss settlement process that involved obtaining a valuation report from [CCC

---

[2] The following facts are drawn from the SAC and are assumed to be true for purposes of Defendants' motions to dismiss and to strike class allegations. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017) (citing *Parkcentral Glob.Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014)); *see also Shunock v. Apple, Inc.*, 738 F. Supp. 3d 371, 374 (S.D.N.Y. 2024).

Information Services, Inc. ('CCC')] and then using that valuation to calculate the benefit payment under the policy." (*Id.* ¶ 45.) As conceded by Defendants:

> CCC's valuation reports . . . purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. CCC then adjusts the advertised prices of those comparable vehicles "to reflect differences in vehicle attributes, including mileage and options." The "Base Vehicle Value," which equates with the loss vehicle's actual cash value before taking into account the condition of the loss vehicle, "is the weighted average of the adjusted values of the comparable vehicles[.]"

(*Id.* ¶¶ 46–47); *see* Dkt. 148, at 10–12 (discussing CCC adjustment process).) According to Plaintiffs, Defendants depressed the ACV calculated via the CCC reports for the applicable comparative vehicles, and because Defendants used this depressed value to calculate what they owed each Plaintiff in insurance coverage, Plaintiffs received less than the true ACV for their wrecked vehicles. (*See* Dkt. 123, ¶¶ 65–80.)

Additionally, Defendants did not pay Cristiano and Nahm the sales tax applicable to their wrecked cars. (*Id.* ¶¶ 13, 90, 94.) Although both Cristiano and Nahm leased (as opposed to owned) their cars, both had paid a "specific premium charge," such that "[u]nder the uniform terms of [Defendants'] policies," any vehicle that they leased was "treated as an 'Owned auto.'" (*Id.* ¶¶ 81– 82.) However, Defendants only paid Cristiano $130.91 as a "Tax Refund Amount," which Plaintiffs represent is merely a "portion of the sales tax [Cristiano had] paid at the time he leased his vehicle." (*Id.* ¶ 90.)

## II. Procedural Background

### A. The 2023 Decision Denying Motions to Dismiss and Strike, and to Compel Appraisal, and Appeal of the 2023 Decision

See filed his original Complaint in state court on January 5, 2021, alleging breach of contract and violations of GBL § 349 against GEICO and GEICO General. (Compl., Dkt. 1-2,

¶¶ 14, 17, 52–67.)  The Complaint brought these claims "on behalf of [See] and all others similarly situated" and requested that the state court certify a proposed class.  (*Id.* ¶¶ 2, 44.)  On February 2, 2021, GEICO and GEICO General removed See's Complaint to this Court.  (Notice of Removal, Dkt. 1.)  On March 8, 2021, See filed an Amended Complaint that added Cristiano as a named plaintiff and pleaded allegations specific to the plaintiffs' pleading burden under Federal Rule of Civil Procedure ("Rule") 23.  (*See* Am. Compl., Dkt. 21, ¶¶ 2, 61–70.)  GEICO and GEICO General brought a motion to dismiss the Amended Complaint and a motion to strike certain allegations in the Amended Complaint, which were fully briefed on June 16, 2021.  (*See* Dkts. 41–44.)  On September 20, 2021, the Court referred the motions to Judge Wicks.  (9/20/2021 Dkt. Order.)  On March 22, 2022, Judge Wicks issued his report and recommendation ("R&R"), in which he recommended denying the motion to dismiss and motion to strike.  *2022 R&R*, 2022 WL 2467695, at *1.  In addition, based on GEICO and GEICO General seeking to compel an appraisal as an alternative in their motion to dismiss, Judge Wicks converted that aspect of the motion to a motion for summary judgment on the issue of appraisal, and recommended denying it as well.[3]  *2022 R&R*, 2022 WL 2467695, at *1.

GEICO and GEICO General raised six objections to the 2022 R&R: "(1) the R&R overlooks Plaintiffs' failure to plausibly allege that GEICO General breached its contractual duty by underpaying the amount for the loss vehicle . . . ; (2) the R&R misstates how the CCC Report is employed by overlooking that the report is available to insured and third-party claimants, and

---

[3] The insurance policies at issue contain an appraisal clause which provides for the appointment of a "disinterested" appraiser in the event that the insurer and insured do not agree on the amount of loss for a covered vehicle.  *2022 R&R*, 2022 WL 2467695, at *2.  After See filed his original Complaint, Defendants GEICO and GEICO General sent See a letter demanding appraisal, which they also sent to Cristiano after he joined the lawsuit.  *Id.*  See and Cristiano rejected the appraisal demand as untimely, which led to GEICO and GEICO General to include the request to compel the appraisal as part of their motion to dismiss.  *Id.* at *1.

that the report is used to facilitate a negotiated settlement of total loss claims . . . ; (3) the R&R mistakenly treats the CCC Report's opinion of valuation as a statement of fact actionable under [GBL § 349] . . . ; (4) the R&R contravenes black-letter law that third-party claimants are not consumers under [GBL § 349] . . . ; (5) the R&R imposes agency theory that contravenes '100 years of black-letter corporate law' . . . ; and finally, (6) the R&R disregards the fact that the parties agreed to an out-of-court appraisal in their insurance policies . . . ."  *2023 Decision*, 2023 WL 2731697, at *6 (citing Defs.'s Obj., Dkt. 86, at 1–2).  After applying the relevant standards of review,[4] on March 30, 2023, the Court adopted the 2022 R&R in full and adopted Judge Wicks' recommended dismissal of GEICO and GEICO General's motion to dismiss, motion to strike, and motion for summary judgment for appraisal.  *Id.* at *8.

On April 27, 2023, GEICO and GEICO General appealed.  (Notice of Appeal, Dkt. 99.) The Second Circuit reviewed only the denial of GEICO and GEICO General's request to compel appraisal, which it viewed as a "form of arbitration."  *Milligan.*, 2025 WL 799276, at *3.  On March 13, 2025, the Circuit affirmed the *2023 Decision*.  *Id.* at *7.

**B.     The Instant Motions**

1.     The SAC

On July 30, 2021, while briefing on Defendants' motions to dismiss, strike, and compel appraisal was ongoing, See and Cristiano sought leave to file the SAC.  (Dkt. 52.)  The motion for leave to file the SAC was fully briefed on January 31, 2022.  (12/14/2021 Dkt. Order.)  On

---

[4] The Court applied clear error review to those portions of the 2022 R&R where GEICO and GEICO General's objections merely recited arguments already presented to the magistrate judge, and *de novo* review to other portions "where the objections [were] grounded in new case law or arguments that were not considered by the magistrate judge."  *2023 Decision*, 2023 WL 2731697, at *5 (citation omitted).

August 10, 2022, Judge Wicks denied See and Cristiano's motion to file the SAC with leave to renew pending this Court's decision on the 2022 R&R. (8/10/2022 Dkt. Order.) After the Court adopted the 2022 R&R, *see 2023 Decision*, 2023 WL 2731697, at *8, and Defendants appealed, (*see* Notice of Appeal, Dkt. 99), GEICO and GEICO General sought a stay of the matter pending their appeal, (*see* Mot. to Stay, Dkt. 104). On June 28, 2023, the Court notified the parties that it "no longer ha[d] discretion to decide Defendants' motion to stay pending appeal [given the Supreme Court's ruling in *Coinbase, Inc. v. Bielski*, 599 U.S. 732 (2023)]," terminated the stay motion as moot, and stayed the case pending the Second Circuit's decision. (6/28/2023 Dkt. Order.)

After the Circuit affirmed the Court's *2023 Decision*, See and Cristiano renewed their motion for leave to file the SAC. (Dkt. 119.) On July 21, 2025, Judge Wicks granted the motion. *See v. Gov't Emps. Ins. Co.*, No. 21-CV-0547 (PKC) (JMW), 2025 WL 2042323, at *11 (E.D.N.Y. July 21, 2025). See and Cristiano, now joined by Nahm and Milner-Koonce as named plaintiffs, filed the SAC the following day. (SAC, Dkt. 123.) On August 4, 2025, GEICO and GEICO General appealed Judge Wicks' decision allowing the SAC's filing. (Appeal of Magistrate Judge Decision ("SAC Appeal"), Dkt. 125.) On August 22, 2025, GEICO and GEICO General, now joined by GEICO Indemnity as Defendants, also filed a letter seeking a pre-motion conference ahead of their planned motion to dismiss the SAC. (Dkt. 127.) The Court ordered briefing on both the SAC Appeal and the proposed motion to dismiss. (8/8/2025 Scheduling Order; 9/3/2025 Dkt. Order.) "[G]iven the overlapping issues in the [SAC] Appeal and the proposed motion to dismiss—i.e., Defendants' Appeal argues futility of certain claims alleged by Plaintiff[s], which is assessed under the same standard as a motion to dismiss—the Court [decided to] rule on both motions together." (10/20/2025 Dkt. Order.) By December 18, 2025, the SAC Appeal and the

6

motion to dismiss were fully briefed.  (*See* Mot. to Dismiss ("MTD"), Dkt. 148; MTD Opp'n, Dkt. 149; MTD Reply, Dkt. 150.)

> 2.    Discovery

In parallel, the parties began discovery.  (*See* 9/17/2025 Min. Order (discussing discovery deadlines).)  On September 18, 2025, Plaintiffs filed a motion to compel certain discovery responses by Defendants.  (Dkt. 131.)  Defendants sought a stay of discovery pending the resolution of the SAC Appeal and motion to dismiss.  (Dkt. 132-1, at 1.)  On October 11, 2025, Judge Wicks granted in part and denied in part Plaintiffs' motion to compel, requiring Defendants to respond to a narrowed set of requests, and denied Defendants' motion to stay discovery.  *See See v. Gov't Emps. Ins. Co.*, No. 21-CV-0547 (PKC) (JMW), 2025 WL 2917100, at *4–7 (E.D.N.Y. Oct. 11, 2025) ("*October Order*"), *reconsideration denied*, No. 21-CV-0547 (PKC) (JMW), 2025 WL 3083866 (E.D.N.Y. Nov. 5, 2025) ("*November Order*").  Both parties sought reconsideration of Judge Wicks' ruling.  (Dkts. 137–38; *see also* Dkts. 139–41.)  On November 5, 2025, Judge Wicks denied reconsideration.  *November Order*, 2025 WL 3083866, at *5.  On November 19, 2025, Defendants appealed Judge Wicks' denial of reconsideration to this Court. (Appeal of Magistrate Judge Decision ("Discovery Appeal"), Dkt. 143.)  The Discovery Appeal was fully briefed on December 19, 2025.  (*See* Discovery Appeal Reply, Dkt. 151.)

## DISCUSSION

The Court addresses Defendants' motion to dismiss the SAC first, as its disposition will necessarily affect the resolution of the two appeals.

## I.    Motion to Dismiss

### A.    Counts I & II of the SAC

In their motion to dismiss, Defendants seek to dismiss the entirety of Plaintiffs' SAC. (Mot. to Dismiss ("MTD"), Dkt. 148, at 1.)  Defendants concede—as they must—that some of

their arguments were previously addressed in the *2022 R&R* and the Court's *2023 Decision*. (*Id.* at 1 n.1.) And indeed, Defendants have already tested See and Cristiano's breach of contract and GBL § 349 claims—Counts I and II in the SAC, respectively—and come up short.

In Count I, Plaintiffs allege that they sustained actual damages in the form of settlement amounts below what they were owed under their respective insurance policies, because Defendants used "improper and unfounded condition adjustments hidden in CCC valuation reports" and determined an ACV "less than the actual cash value required by the insurance contract." (SAC, Dkt. 123, ¶¶ 113–14.) In all material respects, Count I of the SAC mirrors Count I of the Amended Complaint that Defendants previously sought unsuccessfully to dismiss. (*Compare id.* ¶¶ 108–14, *with* Am. Compl., Dkt. 21, ¶¶ 71–77.) In Count II, Plaintiffs argue that Defendants' "use of hidden, misrepresented, undocumented, and unfounded condition adjustments contrary to appraisal methodologies and standards . . . as a means of undervaluing claimants' total loss claims" constitute deceptive practices in violation of GBL § 349. (SAC, Dkt. 123, ¶¶ 119–120.) Once again, in all material respects, Count II of the SAC mirrors Count II of the Amended Complaint that Defendants previously sought unsuccessfully to dismiss. (*Compare id.* ¶¶ 115–25, *with* Am. Compl., Dkt. 21, ¶¶ 78–88.) In seeking to dismiss Counts I and II of the SAC, Defendants raise the same arguments that they made—and that the Court rejected—in seeking dismissal of these claims in the Amended Complaint. (*Compare* MTD, Dkt. 148, at 12–13, *with* Mot. to Dismiss, Dkt. 42, at 6, 8, 14–15, and *2023 Decision*, 2023 WL 2731697, at *11–15.)

Because of these extensive similarities, Plaintiffs argue that prior rulings in this case "control here under the law of the case doctrine" and foreclose Defendants' dismissal efforts. (*See* MTD Opp'n, Dkt. 149, at 13.) Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re*

*Eng. Sheppard Realty Corp.*, 481 F. App'x 691, 692 (2d Cir. 2012) (summary order) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983); *LPD New York, LLC. v. Adidas Am., Inc.*, No. 15-CV-6360 (MKB) (RLM), 2019 WL 1433055, at *7 (E.D.N.Y. Mar. 29, 2019) (same) (quoting *Ariz. Premium Fin. Co. v. Emps'rs Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x 713, 716 (2d Cir. 2014)).  The doctrine is discretionary, *see Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018), and is almost exclusively applied to final judgments, *see LPD New York*, 2019 WL 1433055, at *7; *see also Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995), which do not include *denials* of motions to dismiss, *see Hill v. City of New York*, 45 F.3d 653, 659 (2d Cir. 1995); *see also Murr Plumbing, Inc.*, 48 F.3d at 1070.  However, the Court finds significant wisdom in the proposition that parties, and the Court itself, need not revisit prior rulings where the facts, arguments, and controlling law remain unchanged.  *See Greenwood v. Am. Kennel Club*, No. 1:23-CV-10516 (GHW), 2025 WL 3248803, at *7 (S.D.N.Y. Nov. 20, 2025) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (quoting *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *LPD New York*, 2019 WL 1433055, at *7 ("A court should . . . be 'loathe to revisit an earlier decision "in the absence of extraordinary circumstances."'" (quoting *N. River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995)).

Here, in seeking the Court's renewed analysis of the same claims, based on the same dismissal arguments, Defendants only point to out-of-circuit decisions that were issued after this Court denied Defendant's motion to dismiss the Amended Complaint.  (*See* MTD, Dkt. 148, at 4–5.)  However, as the Court previously explained, "it is well-established that 'a decision of another circuit [is] not binding' on this Court."  *2023 Decision*, 2023 WL 2731697, at *10 (first citing

9

*Bryant v. Steele*, 93 F. Supp. 3d 80, 89 (E.D.N.Y. 2015); and then citing *Chen v. Holder*, 367 F. App'x 237, 238 (2d Cir. 2010) (summary order) (unnumbered footnote reminding counsel that cases from other circuits are not binding precedent within the Second Circuit)). Indeed, Defendants appear to concede as much. (MTD Reply, Dkt. 150, at 1 ("These recent Circuit Court decisions, *if followed by the Second Circuit*, doom Plaintiffs' alleged individual claims for relief.") (emphasis added).) Furthermore, as was true with the out-of-circuit cases Defendants cited in their first motion to dismiss, the additional cases they now rely on lack "even persuasive authority for the proposition advanced by Defendants because [those courts were] reviewing the district court's denial of a motion for class certification, not a motion to dismiss,"[5] *2023 Decision*, 2023 WL 2731697, at *10 (citation omitted), and overturned the respective district courts where plaintiffs alleged only "irrelevant" challenges to an insurer's settlement calculations without actual demonstrated harm, *see Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461, 463 (4th Cir. 2025); *Drummond v. Progressive Specialty Ins. Co*, 142 F.4th 149, 152 (3d Cir. 2025); *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567 (7th Cir. 2025); *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1108 (9th Cir. 2025). Plaintiffs' claims here are not so academic. (*See, e.g.*, SAC, Dkt. 123, ¶ 114 (identifying specific damage amounts).) Unless or until the Second Circuit elects to both adopt these out-of-circuit decisions and extend their holdings to motions to dismiss, Defendants' case law does not displace nor undermine the Court's prior rulings on these counts, which reflect the current law in this Circuit.

---

[5] Defendants argue that these out-of-circuit decisions are "indisputably relevant given Plaintiffs also attempt to pursue their claims on a classwide basis here." (MTD Reply, Dkt. 150, at 3.) But again, the question of class certification is not (yet) before the Court. And Defendants offer no case law in support of their implicit argument that the Court must get ahead of the certification process and deny claims valid under *this Circuit*'s law because these claims have not survived in *other* Circuits where putative—but yet unidentified—class members might reside.

The Court otherwise declines to repeat its analysis of the same claims and same arguments, and denies Defendants' motion to dismiss Counts I and II of the SAC on the same basis as it denied Defendants' motion to dismiss the Amended Complaint. *See 2023 Decision*, 2023 WL 2731697, at *9–15.

## B.    Counts III & IV of the SAC

Defendants also seek to dismiss Counts III and IV of the SAC, which are new and asserted on behalf of Cristiano, Nahm, and all others similarly situated. (SAC, Dkt. 123, ¶¶ 127, 134.) Count III accuses Defendants of breach of contract with respect to Defendants' failure to reimburse Cristiano and Nahm for sales tax they paid on their leased wrecked vehicles. (*Id.* ¶¶ 127–132.) Count IV accuses Defendants of violating GBL § 349 by "misrepresent[ing] to Plaintiffs Cristiano and Nahm . . . that they were receiving actual cash value of their totaled vehicles despite the amount not including sales tax on the value of the loss vehicle." (*Id.* ¶ 139.) Because these counts are new and thus not covered by the Court's prior rulings, the Court assesses them under Rule 12(b)(6)'s dismissal standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and

11

common sense.'" *2023 Decision*, 2023 WL 2731697 at *9 (quoting *Ashcroft*, 556 U.S. at 679). "In addressing the sufficiency of a complaint[,] [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Id.* (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)).

### 1.    Count III: Plaintiffs' Tax Breach of Contract Claim

Plaintiffs allege that, at the time Cristiano and Nahm made claims to Defendants for their wrecked vehicles, "Cristiano and Nahm were party to an insurance contract with Defendants that required Defendants to pay [them] the 'replacement cost,' less certain deductions, of their totaled vehicles as the actual cash value of the loss vehicle;" that this replacement cost included the sales tax Cristiano and Nahm each paid on their vehicle lease contracts; and that "Defendants failed to pay Plaintiffs Cristiano and Nahm [this] sales tax," thus failing to pay the replacement cost Cristiano and Nahm were entitled to under their insurance contracts and breaching these contracts. (SAC, Dkt. 123, at ¶¶ 129–131.)

"[I]nsurance policies are interpreted according to general rules of contract interpretation." *Id.* at *4 (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 89 (2d Cir. 2012) (footnote omitted)); *see Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp., Inc.*, 745 F. Supp. 3d 170, 183 (S.D.N.Y. 2024) ("[I]nsurance policies are analyzed as contracts generally.") (internal citations omitted). "Under New York law, to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Barlow v. Gov't Emps. Ins. Co.*, No. 19-CV-3349 (PKC) (RML), 2020 WL 5802274, at *3 (E.D.N.Y. Sep. 29, 2020) (quoting

*Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)); *see Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (holding same).

The parties do not dispute that the insurance contract was formed or that Cristiano and Nahm performed their part of this contract.  But Defendants argue that there was no failure to perform by Defendants because "neither the Policies nor New York law require GEICO General or [GEICO] to pay Plaintiffs Cristiano and Nahm sales tax for their totaled leased vehicle claims." (MTD, Dkt. 148, at 15.)  Even if the contracts included such a duty to pay tax amounts, there is no injury because "Cristiano and Nahm also fail to plausibly allege GEICO General and [GEICO] underpaid their totaled leased vehicle claims."   (*Id.*)   The Court disagrees; Plaintiffs have sufficiently alleged a breach of contract with respect to the failure to reimburse Cristiano and Nam for sales tax they paid on their leased vehicles.

a)    <u>Defendants' Failure to Perform</u>

Plaintiffs allege that Defendants failed to perform a duty both explicitly detailed in the relevant policies and mandated by New York law.  (*See* MTD Opp'n, Dkt. 149, at 19–22 (discussing policy language and New York law).)  With respect to the policy language, Cristiano and Nahm both argue that they paid "a specific premium charge" such that their leased vehicles were treated as an "owned auto" under their insurance policies.  (*See, e.g.*, Cristiano Insurance Policy, Dkt. 123-5, at ECF[6] 15 (providing, under 11(a) of SECTION III, that an "owned auto" means "any vehicle described in this policy for which a specific premium charge indicates there is coverage"); SAC, Dkt. 123, ¶¶ 83–84 (representing that Cristiano and Nahm both paid specific premium charges).)  Pursuant to the policies, Plaintiffs argue, Defendants had a duty to pay a

---

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

13

"replacement cost . . . which includes taxes." (SAC, Dkt. 123, ¶ 86.) And pursuant to New York law, Plaintiffs argue that "payment of [ACV] to all claimants (including first-party and third-party claimants) must include sales tax." (*Id.* ¶ 86 (quoting 11 N.Y.C.R.R. § 216.6(b) ("Actual cash value, unless otherwise specifically defined by law or policy, means the lesser of the amounts for which the claimant can reasonably be expected to . . . replace it with an item substantially identical to the item damaged. Such amount shall include all monies paid or payable as sales tax on the item repaired or replaced.")).)

Defendants are adamant that the leased nature of Cristiano and Nahm's vehicles circumscribes their duties, such that there was no failure to perform. First, Defendants argue that their duty extended solely to reimbursement for *physical* losses. (*See* SAC Appeal, Dkt. 125[7], at 15–16.) This is because the policy itself limits its coverage to "collision loss to the owned or non-owned auto,' with 'loss' defined as 'direct and accidental loss of or damage to' an insured vehicle or '[o]ther insured property.'" (*Id.* at 8 (quoting *Barlow*, 2020 WL 5802274, at *4).) Second, Defendants argue that, pursuant to New York tax law, the sales taxes originally paid by Cristiano and Nahm were taxes paid on the rental *agreements* rather than the leased cars themselves. (*Id.* at 17 (quoting N.Y. Tax Law § 1111(i)(A)).) "Because those loss vehicles were leased and were never purchased by Plaintiffs Cristiano and Nahm, sales tax on the *vehicles* was not paid and was not payable," Defendants claim. (*Id.* at 16.) Defendants further claim that under the same New York law Plaintiffs rely on,[8] a claimant can expect the amount for which they can

---

[7] Defendants "refer to and incorporate" their SAC Appeal memorandum into their motion to dismiss, given the unique procedural posture of this case and the Court's directive that Defendants' motion to dismiss "include but need not be limited to any additional briefing not yet included in their Appeal." (MTD, Dkt. 148, at 15; 10/20/2025 Dkt. Order.) The Court therefore draws the bulk of Defendants' Count III arguments from their Appeal memorandum.

[8] There is no dispute that Regulation 64 is "incorporated into Plaintiffs Cristiano's and Nahm's Policies." (SAC Appeal, Dkt. 125, at 16; *see id.* at 15 ("In New York, the applicable

reasonably be expected to replace their damaged property "with an item substantially identical," and that said amount "shall include all monies paid or payable as sales tax on the item repaired or replaced." (*Id.* at 16 (quoting 11 N.Y.C.R.R. § 216.6(b)).) But as Defendants see it, "the 'item' referred to is the loss vehicle," and not the lease agreements upon which Plaintiffs paid the sales tax. (*Id.*) These arguments, however, ignore the plain and unambiguous language of the parties' insurance contract.

"In New York, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." *Barlow*, 2020 WL 5802274, at *4 (quoting *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005)). "The key inquiry at this initial interpretation stage is whether the contract is unambiguous with respect to the question disputed by the parties." *Id.* (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). Here, Defendants' policy identifies two distinct types of "autos," which, taken together, appear to form the entire universe of auto options. The first is a "non-owned auto," which Paragraph 10 of Cristiano's policy defines as:

> **[A]** *private passenger auto, utility auto, farm auto,* **or** *trailer* **not owned by or furnished for the regular use of either** *you* **or** *your relatives,* except a *temporary substitute auto. You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner. **Except for a** *temporary substitute auto, an* **auto rented or leased for more than 30 days will be considered as furnished for regular use.**

(Cristiano Insurance Policy, Dkt. 123-5, at ECF 15 (italics in original; bold added).) The second is an "owned auto," which Paragraph 11 of Cristiano's policy defines as:

> **(a) [A]ny vehicle described in this policy for which a specific premium charge indicates there is coverage;**

---

provisions of Insurance Law are deemed to be part of an insurance contract as though written into it." (quoting *Barlow*, 2020 WL 5802274, at *5) (internal quotation marks and citation omitted)).)

(b) a private passenger, farm auto or utility auto or a trailer, ownership of which you acquire during the policy period or for which you enter into a lease for a term of six months or more during the policy period, if

> (i) it replaces an owned auto as described in (a) above, or

> (ii) we insure all private passenger, farm, utility autos and trailers owned or leased by you on the date of such acquisition and you request us to add it to the policy within 30 days afterward; [or]

(c) a temporary substitute auto.

(*Id.*)  Thus, Defendants' policy treats leased vehicles for which the insured has paid a "specific premium charge" as an "*owned auto*."  (*Id.*)  Consistent with this definition, "non-owned autos" exclude "private passenger auto[s]" that are "furnished for the regular use of either you or your relatives," which encompasses "an auto rented or leased for more than 30 days."  (*Id.* (emphasis removed).)  The policy goes on to identify Defendants' duty to "pay for collision loss to the owned or non-owned auto for the amount of each loss less the applicable deductible."  (*Id.* at ECF 16.)  The policy also does not differentiate between types of autos in its definition of ACV.  (*See id.* at ECF 15.)  In essence, Defendants' own policy appears to treat "non-owned auto[s]" and "owned auto[s]" identically; to the extent there is any difference in coverage, Plaintiffs' vehicles match the policy's definition of "owned auto[s]."[9]  "Plaintiff[s'] proffered interpretation of the policy is reasonable, which is all that is required to deny the instant motion to dismiss." *Marcelletti*, 720 F. Supp. 3d at 249; *see Shiloah v. GEICO Indem. Co.*, No. 6:24-CV-6447 (EAW), 2025 WL 790519, at *1 (W.D.N.Y. Mar. 12, 2025) (same);[10] *c.f. Nevias v. Crystal Vision, LLC*, No. 23-CV-7075

---

[9] While the Court does not find the relevant provisions in the policy at all ambiguous, any ambiguity would be "construed in favor of coverage and against the insurer, because as the drafter of the policy the insurer is responsible for the ambiguity." *Marcelletti v. GEICO Gen. Ins. Co.*, 720 F. Supp. 3d 243, 248 (W.D.N.Y. 2024) (quoting *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999)).

[10] Chief Judge Wolford of the Western District of New York, who issued both the *Marcelletti* and *Shiloah* opinions, noted in *Shiloah* that GEICO made no reference to *Marcelletti* in its motion to dismiss, "simply stating in a footnote that it disagreed with the decision and it was

(JPO), 2024 WL 3938262, at *4 (S.D.N.Y. Aug. 26, 2024) ("At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." (quoting *Orchard Hill Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016)).

Defendants' reliance on this Court's decision in *Barlow* is misplaced.  (*See* SAC Appeal, Dkt. 125, at 14–15.)  Although the Court held in *Barlow* that the ACV is the *maximum* amount an insured can recover for a totaled vehicle under the insurance policy, *see Barlow*, 2020 WL 5802274, at *4 (finding that vehicle's ACV is the "liability ceiling [and not the] floor") (quoting *Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 661–62 (7th Cir. 2020)), this does not mean that Plaintiffs are not entitled to recover the sales tax they paid on their leased vehicles as part of the ACV.  In *Barlow,* the Court dismissed claims premised on the insurance company not covering "title costs and fees." *Id.* at *4–5.  While the parties' motion briefing in *Barlow* focused on a sales tax issue, the Court found that the plaintiffs had "never asserted" a claim based on the defendants' failure to pay sales tax and that therefore the defendants' motion to dismiss this claim was "moot." *Barlow*, 2020 WL 5802274, at*7.  Furthermore, to the extent the Court did address sales tax payments, its analysis contradicts Defendants.  While the policies there—as here—did not explicitly mention title fees and costs or sales tax, the Court found that New York insurance law filled any such apparent silence. *Id.* at *5–6.  "Regulation 64, effectively written into the Policy . . . does not require payment of ancillary fees, such as license and tag fees," but it does

---

'not controlling.'"  *Shiloah*, 2025 WL 790519, at *1.  The Court is struck by the similarities between GEICO's litigation tactics in *Shiloah* and their litigation tactics here, where Defendants have, at best, argued their "disagree[ment]" with the Court's prior contrary rulings in *this* case. (MTD, Dkt. 148, at 1 n.1.)

17

"provid[e] for reimbursement of sales tax." *Id.* at *6.[11]   Indeed, "in calculating the actual cash value of a vehicle upon a total loss where the claimant elects to retain the salvage, the definition of [ACV] in [11 N.Y.C.R.R.] § 216.6(b)(2) specifies that the cost of replacement includes sales tax." *Id.* (quoting General Counsel Opinion No. 10-30-2008, 2008 WL 4966645 (N.Y. Ins. Bul.)).

Despite basing much of their ACV argument on *Barlow*, Defendants disclaim its ultimate applicability because "*Barlow* did not concern a totaled *leased* vehicle, for which sales tax is not owed under Regulation 64." (SAC Appeal Reply, Dkt. 129, at 3 n.1.)   As discussed *supra*, Defendants argue that sales taxes are paid on the lease agreement rather than the leased vehicle; thus, there was no "monies paid or payable [by Plaintiffs] as sales tax on the item repaired or replaced," and no such monies were owed by Defendants. (SAC Appeal, Dkt. 125, at 16 (quoting 11 N.Y.C.R.R. § 216.6(b)); *id.* at 17 ("Taxes imposed on automobile leases under New York Tax Law § 1111(i)(A) are not sales taxes on any vehicle.").)   The Court does not find Defendants' argument persuasive.   Under Section 1111(i), the sales and use tax for a leased vehicle is "due at the inception of the lease on the total amount of the lease payments for the entire term of the lease." N.Y. Comp. Codes R. & Regs. tit. 20, § 527.15.   In other words, instead of paying sales taxes on each lease payment, the lessee pays the total sales tax upfront.   Defendants have provided no in-

---

[11]As relevant here, Regulation 64 specifically explains that "actual cash value," "unless otherwise specifically defined by law or policy" is defined as . . . "the lesser of the amounts for which the claimant can reasonably be expected to: (1) repair the property to its condition immediately prior to the loss; or (2) replace it with an item substantially identical to the item damaged. *Such amount shall include all monies paid or payable as sales taxes on the item repaired or replaced.* This shall not be construed to prevent an insurer from issuing a policy insuring against physical damage to property, where the amount of damages to be paid in the event of a total loss to the property is a specified dollar amount."

*Barlow*, 2020 WL 5802274, at *5 (quoting 11 N.Y.C.R.R. § 216.6(b)) (emphasis added).

Circuit case law that suggests that this payment structure impacts the ACV of a vehicle such that a lessee should not be entitled to recoup these "monies," which the lessee spent securing the use of the vehicle.

b)      Damages

Defendants also contest any damages related to Plaintiffs' Count III, arguing that Plaintiffs must plead underpayment with individualized specificity.  (*See* MTD, Dkt. 148, at 3–6.)  While "conclusory" allegations are indeed in sufficient to meet Plaintiffs' burden of proof, Plaintiffs' pleadings go beyond "[s]tating in a conclusory manner that an agreement was breached." *Khurana v. Wahed Inv., LLC*, No. 18-CV-0233 (LAK) (BCM), 2019 WL 1430433, at *11 (S.D.N.Y. Feb. 26, 2019) (quoting *Berman v. Sugo LLC,*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008), *R&R adopted*, 2019 WL 1432589 (S.D.N.Y. Mar. 29, 2019)).  As discussed above, Plaintiffs allege in detail the specific breaches and damages.  (*See generally* SAC, Dkt. 123.)  "Although a plaintiff must plead[] factual content that allows the court to draw the reasonable inference that he suffered damages as a result of the breach, he need not, at this stage, specify the measure of damages nor plead . . . [specific]  proof  of  causation."   *TOA Sys., Inc. v. Int'l Bus. Machines Corp.*, No. 18-CV-10685 (VB), 2020 WL 2732016, at *3 (S.D.N.Y. May 26, 2020) (internal quotation marks  and  citations  omitted).   The question of specific damages and their magnitude is not appropriate at the motion to dismiss stage. *See Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 2017 WL 4535933, at *5 (E.D.N.Y. Oct. 7, 2017) (finding it "premature at the motion to dismiss stage to determine what form of damages may be appropriate" for breach of contract).

\*      \*      \*

Thus, Defendants' motion to dismiss Count III of the SAC is denied.

19

2.      Count IV: Plaintiffs' Tax GBL § 349 Claim

"New York General Business Law Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *2022 R&R*, 2022 WL 2467695, at *9 (citing GBL § 349). "To plausibly state a claim under [GBL §] 49, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* (quoting *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 21-CV-1082, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022) (summary order)). "An action under GBL § 349 is not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), 'but need only meet the bare-bones notice-pleading requirements of Rule 8(a).'" *Id.* (quoting *Kronenberg v. Allstate Ins. Co.*, 18-CV-6899 (NGG) (JO), 2020 WL 1234603, at *2 (E.D.N.Y. Mar. 13, 2020)).

Defendants' challenge to Count IV of the SAC focuses on the second element, i.e., whether Plaintiffs have sufficiently alleged that Defendants' conduct is materially misleading. Defendants argue that it is "wholly implausible" that Cristiano and Nahm were misled, because "GEICO General and [GEICO] informed . . . Cristiano and Nahm in writing at the time of their total loss claims that $0.00 would be paid for sales tax." (MTD, Dkt. 148, at 16.)[12] "In short, [Defendants

---

[12] Defendants appear to concede that their alleged conduct is "consumer-oriented," as they marshal no argument against this. With respect to injury, Defendants challenge Count IV on some of the same bases as Count III—namely, that "there was no duty to pay sales tax for . . . Cristiano's and Nahm's totaled leased vehicle claims, . . . and even if there was[,] . . . Cristiano and Nahm fail to plausibly allege underpayment." (MTD, Dkt. 148, at 16.) The Court has already dispatched both arguments in its analysis of Count III and does not repeat that analysis here. *See supra*, I.B.(2).

argue,] Cristiano and Nahm cannot plausibly allege GEICO's conduct was deceptive when it told them exactly what it was doing." (SAC Appeal, Dkt. 125[13], at 14.)  The Court disagrees.

a)        Materially Misleading Conduct

"Whether an act is materially misleading is defined objectively and looks to whether the act is likely to mislead a reasonable consumer acting reasonably under the circumstances." *2022 R&R*, 2022 WL 2467695, at *9 (quoting *Chery v. Conduent Educ. Servs., LLC*, No. 18-CV-0075, 2022 WL 179876, at *8 (N.D.N.Y. Jan. 20, 2022) (internal quotation marks and citation omitted); *see Kronenberg*, 2020 WL 1234603, at *3 ("The standard for whether an act or practice is materially misleading is objective; it requires a showing that a reasonable consumer would have been misled by the defendant's conduct.") (internal quotation marks, brackets, and citation omitted).  "To satisfy the materially misleading element, a plaintiff need not allege that the defendant's conduct was intentionally misleading, only that it would be misleading or deceptive to a reasonable consumer." *2022 R&R*, 2022 WL 2467695, at *9 (citing *People v. Wilco Energy Corp.*, 284 A.D.2d 469, 471, 728 N.Y.S.2d 471, 473 (2d Dep't 2001)).  "Because the inquiry hinges on the reasonableness of a consumer, '[c]ourts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss.'"  *Id.* (quoting *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019), *R&R adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019)) (citation and quotation marks omitted); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (collecting cases).

---

[13] Defendants also refer to and incorporate their appeal briefing into their MTD on this count.  (*See* MTD, Dkt. 148, at 16.)

Despite this, Defendants urge the Court to "determine, as a matter of law, [that] a reasonable consumer would not have been misled by" Defendants' statements. (MTD, Dkt. 148, at 7 (first citing *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 362 (1st Dep't 1994); and then citing *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).)[14]  In doing so, Defendants attempt to narrow the analysis to the single line in Cristiano's and Nahm's "Total Loss Settlement Explanations" that indicates a tax settlement amount of $0.00. (*See* SAC Appeal, Dkt. 125, at 12–13; Total Loss Settlement Explanations, Dkt. 123-6.)  But these settlement explanations are not the allegedly misleading acts; instead, Plaintiffs' allegations are centered on Defendants' promise—before any settlement explanations were ever initiated—that *should* a loss happen, Plaintiffs would be reimbursed the ACVs of their vehicles, which in New York State includes sales tax. (SAC, Dkt. 123, ¶ 139.)  Defendants' subsequent failure to pay the sales tax rendered their initial promise to do so misleading.  "[W]here, as here, the essence of a plaintiff's claim is that the '[i]nsurer *did not do* what its policy said it would do' . . . an insurer cannot overcome a claim of deception by disclosing estimates stating the rates to be paid."  *See Kronenberg*, 2020 WL 1234603, at *4 (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017)); *see 2022 R&R*, 2022 WL 2467695, at *10 (rejecting Defendants' claim that the valuation reports' transparency, "hing[ing] on one phrase in the valuation report," nullified Plaintiffs' allegations of misleading acts because "a reasonable consumer expecting actual cash value for their loss vehicle would be misled by Defendants'

---

[14] The *Fink* court settled this question as a matter of law where there was a "gaping hole" in plaintiffs' submissions with respect to the allegedly misquoted or misleading excerpts from the advertisements at issue. *See Fink*, 714 F.3d at 741.  Not so here, where Plaintiffs have provided the underlying policy agreements. (*See, e.g.*, Cristiano Insurance Policy, Dkt. 123-5.)

valuation process even after reading the condition adjustment statement on the CCC report" (citing *Kronenberg*, 2020 WL 1234603, at *4)).

Thus, Plaintiffs have adequately alleged materially misleading conduct based on Defendants representing that policyholders would receive ACV for totaled vehicles but then failing to pay policyholders sales taxes on totaled vehicles covered by the policy.

*    *    *

Accordingly, Defendants' motion to dismiss Count IV of the SAC is denied.

### C.    Defendants' Statute of Limitations Arguments

In parallel to their substantive challenges to Counts II and IV of the SAC, Defendants argue that Nahm's GBL § 349 claims "also fail because they are time-barred." (MTD, Dkt. 148, at 17.) First, Defendants argue that Nahm's alleged injuries occurred "on or around June 1, 2018," when Nahm received the CCC Report on which he bases Count II. (*Id.* at 17–18 (citing Dkt. 123-9 (Nahm's CCC Report)).) Defendants then note that claims brought under GBL § 349 are subject to a three-year statute of limitations. (*See id.*); *see also Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 466 (S.D.N.Y. 2015) (citing N.Y. C.P.L.R. § 214(2)). "The accrual of a GBL § 349 claim occurs at the time of the plaintiff's injury, or when all of the factual circumstances necessary to establish a right of action have occurred, so that plaintiff would be entitled to relief." (MTD, Dkt. 148, at 17 (quoting *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 736 (W.D.N.Y. 2020)).)

Defendants assert a statute of limitations defense as to Counts II and IV based on the fact that the original plaintiffs, See and Cristiano, brought their claims against GEICO General, while Nahm asserts his claims against GEICO. (*See* MTD, Dkt. 148, at 17–20.) "[A]t the time . . . See and Cristiano first asserted Count II[,] neither of them had valid claims against [GEICO, Nahm's

23

insurer,] and could not represent a putative class of [GEICO] insureds," such as Nahm.  (MTD, Dkt. 148, at 19.)   Thus, Defendants argue, "neither . . . See nor Cristiano could bring the GBL § 349 claim against [GEICO] that . . . Nahm now alleges," and "no one held . . . Nahm's place in line for his GBL § 349 claims against [GEICO]."  (*Id.* at 19.)  Accordingly, "tolling [pursuant to *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 544 (1974)] is improper."  (*Id.* at 19–20.) Defendants argue the same distinction between Cristiano and See's insurer, GEICO General, and Nahm's insurer, GEICO, makes relation back pursuant to Rule 15 "inapplicable."  (*Id.* at 20.) These arguments fail.

The Court has previously ruled that "Plaintiffs have alleged sufficient facts for this Court to find that an agency relationship existed between GEICO General and [GEICO]."  *2023 Decision*, 2023 WL 2731697, at \*12.  Specifically, the Court found that Plaintiffs had adequately alleged "Defendant [GEICO] 'investigates, handles, and adjusts all insurance claims using the same policies and procedures, regardless [of] which GEICO Company or Companies issued the relevant policy,'" and "that senior executives of [GEICO] signed the Policies in question on behalf of GEICO General."[15]  (*Id.*)  Judge Wicks recommended that, "despite the absence of a contractual relationship with Plaintiffs and [GEICO], Plaintiffs' claims should nonetheless be permitted to move forward against all Defendants based on an agency theory," *2022 R&R*, 2022 WL 2467695, at \*7.  The Court adopted this recommendation in full, *2023 Decision*, 2023 WL 273169, at \*12–13.  Defendants have provided no reason for the Court to revisit or change these findings.

---

[15] Defendants argue that GEICO "could not have been responsible for any representations allegedly made to Plaintiffs See and Cristiano within or concerning their policies."  (MTD, Dkt. 148, at 19.)  This, as with much else in Defendants' latest rounds of briefing, runs directly counter to the Court's prior, explicit findings.  *See 2023 Decision*, 2023 WL 2731697, at \*12–14.

Separately from the Court's prior ruling, relation back is warranted.  "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Zorrilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 477 (S.D.N.Y. 2017) (quoting *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006)).  Here, the "general fact situation alleged in the original pleading" is Defendants' alleged representation to Plaintiffs, through the coverage policies, that Plaintiffs would get ACV for covered vehicles that were totaled, and Defendants' subsequent failure to reimburse Plaintiffs the full ACV—whether through the use of the CCC valuations, which Plaintiffs allege to have undervalued their covered vehicles, or by failing to pay sales taxes on these vehicles.  (*See* MTD Opp'n, Dkt. 149, at 23 ("[B]oth the Original and Amended Complaints alleged that Defendants engaged in a uniform, deceptive practice of underpaying ACV on total loss claims through their valuation and settlement practices.  Count IV alleges that this same course of conduct manifested in a related, uniform deception with respect to sales-tax treatment on total-loss claims for leased vehicles.")); *see also supra*, Section I.B.(2)(a) (discussion of misleading conduct).)  Plaintiffs' GBL § 349 claims in Counts II and IV of the SAC thus properly relate back to the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

\* \* \*

Defendants' statute of limitations arguments are unavailing, and Nahm's claims in Counts II and IV of the SAC shall proceed.

## II.    Motion to Strike Certain Allegations

In the alternative, Defendants move to "strike all allegations asserting claims on behalf of third-party claimants, all allegations against GEICO Casualty, and all group pleading allegations as immaterial and impertinent."  (MTD, Dkt. 148, at 20.)  In all material respects, this request

mirrors Defendants' previous request, which the Court denied.  *See 2023 Decision*, 2023 WL 2731697, at *16 (denying Defendants' request to "strike (1) certain allegations about Defendant [GEICO], (2) allegations about non-defendant GEICO entities, and (3) allegations about third-party claimants").  Defendants' current request to strike "group pleading" is also identical to their prior, rejected request.  (*Compare* MTD, Dkt. 148, at 22 ("Plaintiffs cannot sue 'a non-signatory to the contract' simply because other entities are related to the single entity Plaintiffs allege caused their injury."), *with* Mot. to Dismiss, Dkt. 42, at 22 ("Plaintiffs cannot pursue class claims against [GEICO] simply because it is a related entity with similar or identical practices to GEICO General.").)  Defendants' current request to strike allegations about "third party claimants" similarly matches their prior, rejected request.  (*Compare* MTD, Dkt. 148, at 21 ("[B]ecause Plaintiffs are first-party insureds, and the coverage applicable to first-party insureds is fundamentally different than the coverage potentially available to third-party claimants, Plaintiffs cannot allege any claims on behalf of absent third-party claimants.") *with* Mot. to Dismiss, Dkt. 42, at 23 ("Plaintiffs' claims are based on first-party insurance claims they submitted to their insurer. . . .  Plaintiffs cannot represent third-party claimants, and allegations trying to include such individuals in a class are immaterial and impertinent and should be stricken.").)  Finally, Defendants' current request to strike allegations about GEICO Casualty are also identical to their prior request.  (*Compare* MTD, Dkt. 148, at 21 ("Plaintiffs—who have not alleged and cannot allege any claims against GEICO Casualty—cannot maintain class claims against GEICO Casualty merely because it is an entity related to the named Defendants.") *with* Mot. to Dismiss, Dkt. 42, at 22 ("Plaintiffs cannot maintain class claims against GEICO Casualty and GEICO Indemnity just because they are entities related to GEICO General.").)

Once again, Defendants have provided no reason—nor does the Court see one—for the Court to revisit its prior rulings on these matters. Defendants' motion to strike certain allegations in the SAC is denied.

## III.    Appeals of Magistrate Judge Decisions

Still remaining are Defendants' two appeals from Judge Wicks' decision granting Plaintiffs leave to file their SAC and his decision compelling pre-certification discovery. (SAC Appeal, Dkt. 125; Discovery Appeal, Dkt. 143.)

### A.    Legal Standard

Rule 72(a) governs a district judge's review of a magistrate judge's non-dispositive pretrial rulings.[16] Fed. R. Civ. P. 72(a). Under Rule 72(a), "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Id.*; *see Gonzalez v. Wicked Taco LLC*, No. 23-CV-9555 (NCM) (JAM), 2025 WL 2384040, at *2 (E.D.N.Y. Aug. 18, 2025) ("[F]or objections to a magistrate judge's ruling on non-dispositive matters, district courts must modify or set aside any part of the order that is clearly erroneous or is contrary to law." (quoting *Bulgari v. Bulgari*, No. 22-CV-5072 (LGS), 2025 WL 1413584, at *1 (S.D.N.Y. May 15, 2025))). "Clear error requires a 'definite and firm conviction that a mistake has been committed' based on the 'entire evidence' in the record." *Gonzalez*, 2025 WL 2384040, at *2 (same) (quoting *Dorsett v. Cnty. of Nassau*, 800 F. Supp.

---

[16] As Judge Wicks noted in his M&O, a magistrate judge's granting of a motion to amend a complaint is treated as non-dispositive by courts in this Circuit. *See See v. Gov't Emps. Ins. Co.*, No. 21-CV-0547 (PKC) (JMW), 2025 WL 2042323, at *2 n.2 (E.D.N.Y. July 21, 2025) (first citing *Pusepa v. Annucci*, No. 17-CV-7954 (RA) (OTW), 2024 WL 4579450, at *1 n.1 (S.D.N.Y. Oct. 25, 2024) ("[A] magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive."); and then citing *Portelos v. City of New York*, No. 12-CV-3141 (RRM) (VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sep. 15, 2015) ("[D]istrict courts in this circuit have generally found that denial of a motion to amend is dispositive, whereas granting a motion to amend is non-dispositive.")).

27

2d 453, 456 (E.D.N.Y. 2011), *aff'd sub nom.*, *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013)).  A magistrate judge's order "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure."  *Weiner v. McKeefery*, No. 11-CV-2254 (JFB) (AKT), 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation omitted).  "This is a highly deferential standard," *Gonzalez*, 2025 WL 2384040, at *2 (internal quotations and citation omitted), which "imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [their] discretion," *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 276 (E.D.N.Y. Mar. 7, 2022) (quoting *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015)); *Rivera v. Lettire Constr. Corp.*, No. 21-CV-6006 (KPF) (KHP), 2022 WL 14891414, at *2 (S.D.N.Y. Oct. 26, 2022) (same).

**B.      Analysis**

1.      SAC Appeal

In their SAC Appeal, Defendants argue that Judge Wicks' order "granting Plaintiffs' Motion for Leave to File the [SAC] makes four legal errors and allows Plaintiffs to pursue futile claims set forth in the [SAC]."  (SAC Appeal, Dkt. 125, at 1.)  According to Defendants, these four legal errors are: (1) "ignoring that Plaintiff Nahm's proposed GBL § 349 claims are time-barred"; (2) "disregarding New York's legal distinction between first-party insureds and third-party claimants"; (3) "not holding the amendment's GBL § 349 claims in Count IV fail to state a claim" because "[n]o reasonable person could find [the sales tax disclosures] misleading or deceptive"; and (4) "conflating '*loss*' due under the policy with a limit of liability, and concluding, contrary to New York law, it was plausible to allege Defendants owed sales tax to Plaintiffs Cristiano and Nahm, who leased their totaled vehicles."  (*Id.* at 1–2.)  The Court has already dispensed with all of these arguments in its analysis of Defendants' MTD, *see supra*, Section I.C,

28

(holding that Plaintiff Nahm's GBL § 349 claims are not time-barred); *supra*, Section II (denying Defendants' request to strike allegations about third-party claimants); *supra*, Section I.B.2(a), (holding that Plaintiffs had adequately pleaded misleading conduct with regards to the sales tax reimbursement); and *supra*, Section I.B.1 (holding it is plausible to allege Defendants owed sales tax on leased cars to Plaintiffs Cristiano and Nahm), and thus finds that they do not warrant rejecting or modifying Judge Wicks' decision to permit Plaintiffs to file the SAC.

\* \* \*

Accordingly, Defendants' SAC Appeal is denied.

### 2.    Discovery Appeal

In their second appeal, Defendants seek reversal of Judge Wicks' *November Order* denying reconsideration of his *October Order* compelling Defendants to respond to Plaintiffs' Request for Production Number 2 ("Request No. 2"), which requires Defendants to provide identifying information about putative class members. (Discovery Appeal, Dkt. 143, at 1); *see October Order*, 2025 WL 2917100, at \*4–5; *November Order*, 2025 WL 3083866, at \*5.  Defendants argue that this amounts to requiring Defendants "to disclose the individual names, home addresses, and vehicle identification numbers ('VIN') of potentially hundreds of thousands of non-parties without any finding that this personally identifying information is necessary to the Rule 23 analysis," and that this order therefore "defies relevant legal authority."  (Discovery Appeal, Dkt. 143, at 1.) According to Defendants, precedent dictates that "the identity of putative class members is not discoverable prior to class certification absent a concrete showing that such information is relevant and necessary to establish a Rule 23 requirement."  (*Id.* (first citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352–54 (1978)); then citing Fed. R. Civ. P. 72(a); and then citing 28 U.S.C. § 636(b)(1)(A).)  Defendants contend that Judge Wicks "did not make any finding of necessity"

29

and "ignored less intrusive alternatives," and therefore his *November Order* requiring, *inter alia*, Defendants' production in response to Plaintiffs' Request No. 2 should be set aside. (Discovery Appeal, Dkt. 143, at 1); *see October Order*, 2025 WL 2917100, at *4–5.

Plaintiffs argue that Defendants' Discovery Appeal is an impermissible and untimely attempt to put forth objections to the *October Order* that "Defendants failed to preserve" via a Rule 72(a) objection to the *October Order* by the applicable deadline. (Discovery Resp., Dkt. 147, at 1.) In the alternative, Plaintiffs argue that the "*November Order* correctly recognizes that the specific identifiers at issue here—names, addresses, and VINs—are functionally necessary to conduct reliable Rule 23 analyses and classwide damages modeling in this insurance context," that "Defendants offered no competent, case-specific evidence of undue burden, and [that] any privacy concerns are fully addressed by the robust Protective Order [issued by Judge Wicks] with tiered confidentiality and attorneys'-eyes-only safeguards." (*Id.* (italics added))

The Court disagrees with Plaintiffs' Rule 72(a) argument. While Defendants failed to raise objections to the *October Order*, Defendants did file a cross-motion for reconsideration of the October Order within the applicable deadline. (*See* Cross-Mot. for Recon., Dkt. 138.) This cross-motion for reconsideration reiterated Defendants' arguments regarding, *inter alia*, the alleged irrelevance of "putative class members' personally identifying information." (*See id.* at 2); *November Order*, 2025 WL 3083866, at *4 ("Defendants seek reconsideration on one portion of the undersigned's Order, specifically the portion that compelled Defendants to produce information responsive to the entirety of Plaintiffs' Request for Production Number 2.").) Magistrate judges may rule directly on non-dispositive matters like the instant discovery dispute, *see Kiobel v. Millson*, 592 F.3d 78, 106 (2d Cir. 2010) (Jacobs, C.J., concurring); *Marquez v. Bright Health Grp., Inc.*, No. 22-CV-0101 (AMD) (RLM), 2022 WL 1314812, at *1 n.2 (E.D.N.Y.

30

Apr. 26, 2022), and "magistrate judges [also] have the power to field motions for reconsideration of [such] prior rulings," *United States for use & benefit of M. Frank Higgins & Co. v. Dobco Inc.*, No. 22-CV-9599 (CS) (VR), 2024 WL 1640022, at *1 n.3 (S.D.N.Y. Apr. 16, 2024) (quoting *Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774, 786 n.3 (S.D.N.Y. 2021)); *see also Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2020 WL 1480465, at *2 n.1 (S.D.N.Y. Mar. 26, 2020) (collecting cases in which magistrate judges entertained motions for reconsideration); 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3069 (3d ed. 2023) ("[I]t is within the magistrate judge's discretion to reconsider his or her own rulings.")).  Given that Judge Wicks issued an order on a non-dispositive issue, rather than a report & recommendation, the Court finds no fault *or default* in Defendants filing a (cross) motion for reconsideration rather than objections.  Indeed, Plaintiffs themselves filed the first motion for reconsideration to Judge Wicks' *October Order*—rather than Rule 72(a) objections—which makes Plaintiffs' Rule 72(a) argument ironic in addition to being unavailing.  (*See* Dkt. 137.)  The Court thus does not find Defendants' appeal to be precluded by their decision to move for reconsideration rather than file objections.

Defendants' victory on this issue, however, is short-lived because their appeal fails for a different procedural reason.  Defendants' core argument is that Judge Wicks committed legal error by failing to weigh the *necessity* of Plaintiffs' Request No. 2 subsections.  (*See generally* Discovery Appeal, Dkt. 143.)  But any argument regarding necessity is completely absent from Defendants' prior filings, whether in objection to Plaintiffs' motion to compel or in support of Defendants' cross-motion for reconsideration.  Indeed, until now, the entirety of Defendants' briefing regarding this issue has focused on the questions of relevancy and burden—as Defendants essentially concede.  (*See* Discovery Appeal, Dkt. 143, at 2 ("Defendants opposed the motion . . . explaining

31

RFP 2 improperly seeks protected personally identifying information that is irrelevant to whether Plaintiffs can satisfy the Rule 23 prerequisites to class certification and which Plaintiffs have no present right to obtain."); *see also* Dkt. 133 (mentioning necessity only in the context of Plaintiffs' discovery, as a whole, being rendered "unnecessary" by a Court ruling on Defendants' motion to dismiss).)[17]    Defendants have thus waived a necessity argument.    *See 2023 Decision*, 2023 WL 2731697, at *5 ("District courts conducting *de novo* review 'ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.'" (quoting *Santiago v. City of New York*, No. 15-CV-0517 (NGG) (RER), 2016 WL 5395837, at *1 (E.D.N.Y. Sep. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. Sep. 6, 2017)); *Intorcia v. City of New York*, No. 24-CV-4837 (KAM) (LB), 2025 WL 1220184, at *4 (E.D.N.Y. Apr. 28, 2025) ("Courts generally do not entertain new legal arguments not presented to the magistrate judge." (quoting *Anderson v. Phoenix Beverage Inc.*, No. 12-CV-1055 (DLI) (RML), 2015 WL 737102, at *3 (E.D.N.Y. Feb. 20, 2015))); *Kumaran v. Nat'l Future Ass'n*, No. 20-CV-3668 (GHW) (SDA), 2024 WL 2330655, at *2 (S.D.N.Y. May 22, 2024) ("[A] district judge will not consider new arguments raised in objections to a magistrate judge's [opinion] that could have been raised before the magistrate but were not." (collecting cases)).[18]    Defendants'

---

[17] The Court did find one reference to a finding that "the information sought 'is indispensable to the class certification inquiry,'" in Defendants' reply in support of their cross-motion for reconsideration.    (Dkt. 141, at 1–2 (quoting *Bagley v. New York State Dep't of Health*, No. 15-CV-4845 (FB) (CLP), 2017 WL 11922423, at *1 (E.D.N.Y. Dec. 7, 2017).)    The Court does not consider this single reference in Defendants' reply sufficient to preserve the necessity argument they now seek to make.

[18] Some courts have "applied a multi-factor balancing test to determine whether to consider new legal arguments raised at the objection phase."    *2023 Decision*, 2023 WL 2731697, at *5 (citing *Stock Mkt. Recovery Consultants, Inc. v. Watkins*, No. 13-CV-0193 (PKC) (VVP), 2015 WL 5771997, at *2 (E.D.N.Y. Sep. 30, 2015)).    These factors include "(1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new issue is not open to

failure to raise their necessity argument to Judge Wicks is all the more glaring given their current assertion that a necessity determination was, well, necessary.

But even if the Court were to entertain Defendants' necessity argument on its substance, Defendants fail to meet their "heavy burden," *Galloway*, 589 F. Supp. 3d at 276, to instill in the Court a "definite and firm conviction that a mistake has been committed," *Gonzalez*, 2025 WL 2384040, at *2.  Defendants' case law requires "a showing that discovery [implicating third party privacy interests] is necessary for the plaintiff to support her assertions under Rule 23." *Vilella v. Pup Culture LLC*, No. 23-CV-2291 (LJL), 2023 WL 6318168, at *2 (S.D.N.Y. Sep. 28, 2023) (citation omitted); *see also  Duffy v. Illinois Tool Works Inc.*, No. 15-CV-7407 (JFB) (SIL), 2018 WL 1335357, at *6 (E.D.N.Y. Mar. 15, 2018) (rejecting plaintiffs' request for unredacted customer information where plaintiffs were "silent" as to how this information was "specially relevant" at the class certification stage); *Heras v. Metro. Learning Inst.*, No. 19-CV-2694 (DG), 2021 WL 3269056, at *2 (E.D.N.Y. July 30, 2021) (denying request to compel discovery where plaintiff failed to "demonstrate that the discovery relevant to her contemplated Rule 23 motion could not be obtained through alternative means").[19]

Plaintiffs have made the requisite showing here.  As Plaintiffs highlight in their response, "the requested data is both relevant and proportional to the needs of the case . . . includ[ing] (i)

---

serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered." *Id.* (citing *Amadasu v. Ngati*, No. 05-CV-2585 (RRM) (LB), 2012 WL 3930386, at *5 (E.D.N.Y. Sep. 9, 2012)).  None of these factors counsel in favor of considering Defendants' argument here.

[19] Defendants cite additional case law from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, context, but the Court agrees with Plaintiffs that such case law is largely inapposite on this specific issue, given the unique discovery considerations present in FLSA cases. (*See* Discovery Appeal, Dkt. 143, at 3 (discussing specific FLSA showings required).)

allowing Plaintiffs' expert to verify class membership and tie claims to discrete total-loss events; (ii) ascertaining the applicable sales-tax rate at the time of loss; (iii) de[-]duplicating records and linking transactions to particular vehicles and claims; and (iv) enabling reliable classwide damages calculations and testing uniform practices at scale." (Discovery Appeal Response, Dkt. 147, at 6 n.2.) The Court agrees that individual names, home addresses, and VINs are necessary for Plaintiffs to "support [their] assertions under Rule 23" regarding, *inter alia*, sales tax payments or the lack thereof. *See Vilella*, 2023 WL 6318168, at *2. There is no indication in the record that Plaintiffs will attempt to use this information impermissibly, nor can they given the Protective Orders already in place. (*See November Order*, 2025 WL 3083866, at *4 (identifying existing Protective Orders "directly on point to the issue of personally identifiable information"); *see also Fulton v. City of New York*, No. 20-CV-0144 (WFK) (MMH), 2023 WL 130826, at *3 (E.D.N.Y. Jan. 9, 2023) (rejecting privacy concern argument where "the [c]ourt entered a Confidentiality Order restricting access to sensitive personal data").

Defendants' other appeal arguments fall with their necessity argument. Having found Plaintiffs to have made the requisite showing, the Court need not entertain "less intrusive alternatives."[20] In any event, as Plaintiffs argue, Defendants bore the burden of proving that such alternatives were necessary, (*see* Discovery Appeal Response, Dkt. 147, at 8 ("Under Rule 26, a party resisting discovery bears the burden of showing undue burden,")), and Defendants "failed to supply any evidence (e.g. affidavits, costs estimates, workload data) showing undue burden or intrusion," (*id.* at 9). The Court also agrees with Plaintiffs that, if anything, Defendants' proposal for it to provide anonymized information would "likely increase, rather than decrease, the burden

---

[20] The Court notes that this alleged second argument appears to have been folded into Defendants' wider necessity argument. (*See generally* Discovery Appeal, Dkt. 143.)

on Defendants [because the] anonymization process would require Defendants to scrub or extract names, addresses, and [VINs] from the data." (*Id.* at 11.)

*    *    *

Accordingly, Defendants' Discovery Appeal is denied.

**CONCLUSION**

For the foregoing reasons, the Court finds no merit in any of Defendants' appeals, which are denied.  The Court also denies Defendants' motion to dismiss and motion to strike.  The case shall proceed in accordance with Judge Wicks' discovery orders.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 1, 2026
        Brooklyn, New York

35